JOHN E. COLLINS *vs.* CITY OF BOSTON
(and a companion case [1]).

Suffolk. October 10, 1958. — March 18, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*School and School Committee. Boston. Practice, Civil,* Case stated.

A vote increasing salaries of the president and faculty of the Boston Teachers College as of September 1, adopted by the school committee of Boston in August several months after the committee under St. 1936, c. 224, as amended by St. 1949, c. 117, and the city council had each made unrestricted appropriations for "Instruction" in the schools for the fiscal year in a total amount sufficient to cover such increases, was valid and binding on the city. [707–709]

In a letter from the school committee to the mayor of a city requesting him to recommend to the city council an appropriation of a certain amount for school purposes, a statement that "This amount does not provide . . . for any . . . salary adjustments" did not preclude the committee from subsequently allocating funds appropriated for "Instruction" in accordance with its request to salary adjustments voted by it after the appropriation was made. [709]

A vote by the school committee of Boston in August after all appropriations for the fiscal year had been made, establishing a new schedule of increased compensation for the faculty of the Boston Teachers College effective September 1 and expressed in terms of a minimum, an annual increment, and a maximum and subject to the limitation that "any person holding a position included in the foregoing salary schedule shall as of September 1 . . . be placed on that step of said salary schedule corresponding to his or her years of service in the specified position," was not ambiguous and plainly contemplated the computation of increases on an increment or step rate basis, and its meaning could not be affected by an order passed by the school committee shortly after September 1 declaring that its intent in passing the August vote had been that the increases take effect September 1

---

[1] The companion case is by William F. Looney against the same defendant.

"without reference to their being paid on an increment basis"; nor could the September order be considered to be an amendment of the new salary schedule since as such the order would violate St. 1875, c. 241, § 5, as amended by St. 1933, c. 121, § 2, by increasing during the school year the salaries fixed at the commencement thereof.  [709–710]

Upon submission of an action for unpaid compensation for services rendered on a case stated, the plaintiff was entitled to recover for the period established by the case stated notwithstanding that his declaration asserted a claim for a somewhat shorter period.  [711]

TWO ACTIONS OF CONTRACT.  Writs in the Superior Court dated June 11, 1952, and July 28, 1952, respectively.

The case was heard by *Lurie*, J.

*A. Kenneth Carey*, (*Donald E. Carey* with him,) for the plaintiffs.

*William H. Kerr*, for the defendant.

SPALDING, J.  These are two actions of contract which were consolidated for trial.  The plaintiff Collins was a member of the faculty at the Boston Teachers College which, during the 1951–1952 school year, was under the control of the Boston school department.  The plaintiff Looney was president of the Teachers College during that year. Each plaintiff seeks to recover alleged unpaid balances of compensation for his services for that period.  Collins also seeks to recover compensation claimed by thirty-two faculty members who have assigned their claims to him.  The cases were heard on a statement of agreed facts, amounting to a case stated.  In each case the judge ordered judgment for the defendant.  The plaintiffs appealed.  G. L. c. 231, § 96.

The agreed facts include the following: On April 2, 1951, the defendant's school committee, by a unanimous vote of all its members, passed an order appropriating the sum of $22,770,058.37 for general school purposes for the fiscal year 1951.  This sum included $17,806,243.42 designated for "Instruction."  This order appropriated the maximum amount authorized by St. 1936, c. 224, as amended by St. 1949, c. 117.  On the same day, pursuant to a vote, the committee by its secretary sent a letter to the mayor of

Boston stating that the entire amount available under the legal limit had been appropriated and that this amount fell short of the sum necessary to meet the needs of the school system. The committee requested that the mayor recommend to the city council that it appropriate an additional $804,362.32 for school purposes, in accordance with the provisions of law governing appropriations. The letter concluded with the following: "This amount does not provide for increased cost of supplies or for any additional salary adjustments." On the same day the school committee also submitted to the mayor a request that all of its employees receive an annual increase of $260. Subsequently the mayor recommended that the city council appropriate an additional $1,000,000 for general school purposes. On June 4, 1951, the city council appropriated that sum, specifying that $755,258 of that total was for "Instruction." Thus there was a total appropriation for instruction of $18,561,-501.42 for the fiscal year 1951.

On August 31, 1951, after all appropriations for the fiscal year 1951 had been made, the school committee voted a new schedule of compensation for the president, professors, adviser of women and assistant professors of the Teachers College to take effect as of September 1, 1951. The new schedule set a fixed amount of compensation for the president; the compensation of the others was expressed in terms of a minimum, an annual increment and a maximum. This new schedule granted an increase in pay above the previous levels as supplemented by the $260 general increase voted in June. The schedule was subject to the limitation that "any person holding a position included in the foregoing salary schedule shall as of September 1, 1951, be placed on that step of said salary schedule corresponding to his or her years of service in the specified position, but in no such case shall the salary be reduced." On September 19, 1951, the school committee passed an order declaring that it was the intention of a majority of those who voted for the increases in salaries that those increases take effect as of September 1, 1951, "without reference to their being

paid on an increment basis," and directing the fiscal officers of the city to pay such increases in accordance with that intention.

The auditor and the treasurer of the defendant refused to pay the increases granted by the school committee's vote of August 31, 1951, on the ground that there was no appropriation available at the time the vote was passed and it was therefore illegal and void. The plaintiff Looney and the plaintiff Collins and his assignors were not paid the increases from September 1, 1951, to August 31, 1952. During this period they accepted all compensation paid to them but "without prejudice to the instant cause[s] of action."

It is agreed that if as a matter of law the $18,561,501.42 total appropriation for instruction was available for the purposes of the school committee vote granting salary increases to the plaintiffs then at all relevant times there was an unencumbered balance in this appropriation sufficient to cover the expenditures required by the vote.

1. The first question for decision is whether the school committee's vote raising the salaries of the plaintiffs was valid and binding upon the defendant.

The doctrine of the independence of school committees in matters pertaining to the management of the public schools has often been discussed by this court. See, e.g., *Morse* v. *Ashley*, 193 Mass. 294; *Ring* v. *Woburn*, 311 Mass. 679; *O'Brien* v. *Pittsfield*, 316 Mass. 283. School committees have long enjoyed the exclusive power to select and contract with teachers and to fix their compensation. *Batchelder* v. *Salem*, 4 Cush. 599. *Charlestown* v. *Gardner*, 98 Mass. 587. *Decatur* v. *Auditor of Peabody*, 251 Mass. 82. *Hayes* v. *Brockton*, 313 Mass. 641. *Watt* v. *Chelmsford*, 323 Mass. 697. G. L. c. 71, §§ 37, 38. And a school committee may divert funds appropriated for other purposes in order to provide a salary increase for teachers. *Leonard* v. *School Comm. of Springfield*, 241 Mass. 325. *Lynch* v. *Fall River*, 336 Mass. 558.

The defendant argues that these principles, in part at least, are inapplicable to the city of Boston. We are told

that here there was no appropriation available to pay the salary increases, and therefore the cases at bar are not governed by the principle announced in *Leonard* v. *School Comm. of Springfield*, 241 Mass. 325, because that case merely held that G. L. c. 44, § 32, "did not effect any change in the powers of a school committee to establish the salaries of teachers within the *total* amounts appropriated for school purposes" (emphasis supplied).

The short answer to this is that there was an appropriation available here if the Boston school committee had the power to use or to reallocate sums already appropriated for instruction in order to provide for the salary increases. It is not disputed that a total of $18,561,501.42 had been appropriated for instruction prior to the committee vote on August 31, 1951. The basic question, then, is whether the Boston school committee, by any statute here applicable or by action of the school committee itself or of the city council, has been deprived of freedom of action with respect to any part of this appropriation available for instruction.

We are aware that the Legislature has enacted a long series of acts dealing specifically with the powers of the Boston school committee[1] and that these statutes and others comprise a comprehensive statutory system applicable to school finances in Boston. In these statutes, however, we have found no provision limiting the school committee, in any respect here relevant, in its freedom to deal with funds which that committee itself has power to appropriate for school purposes. Indeed the provisions of one statute applicable here show that broad, and in one respect unusual, powers have been conferred upon the Boston school committee. Statute 1936, c. 224, as amended by St. 1949, c. 117, empowers four fifths of all the members of the committee to

---

[1] St. 1898, c. 400. St. 1901, c. 448. St. 1903, c. 170. St. 1906, c. 205. St. 1907, c. 295. St. 1907, c. 357. St. 1909, c. 388. St. 1911, c. 708. St. 1912, c. 195. St. 1913, c. 615. Spec. St. 1915, c. 300. Spec. St. 1915, c. 372. Spec. St. 1916, c. 267. Spec. St. 1918, c. 132. Spec. St. 1919, c. 206. Spec. St. 1919, c. 249. St. 1920, c. 524. St. 1920, c. 641. St. 1923, c. 488. St. 1925, c. 309. St. 1925, c. 327. St. 1926, c. 153. St. 1926, c. 314. St. 1928, c. 382. St. 1929, c. 256. St. 1930, c. 283. St. 1931, c. 155. St. 1934, c. 145. St. 1935, c. 284. St. 1936, c. 224. St. 1945, c. 513. St. 1948, c. 167. St. 1949, c. 117.

appropriate directly funds for school purposes within stated limits. This is a departure from the more usual procedure where the school committee submits requests for funds to the executive of the municipality who in turn submits a budget to the city council or similar body having the power to appropriate funds. It cannot be doubted that the school committee's power has not been limited in any way now material with respect to funds that it directly appropriates.

Statute 1936, c. 224, as amended, also provides that the school committee may request additional appropriations from the mayor and city council, as it did here. We need not consider whether with respect to such additional appropriations the city council may restrict their use specifically or by implication. No restriction was in fact here imposed either expressly or by implication on the use of the amount which the council appropriated for instruction.

As to the funds appropriated by the city council, the school committee was not precluded from allocating them to the salary increases here involved by its statement in its letter of April 2, 1951, to the mayor. That statement was to the effect that the amount requested did not provide for any additional salary adjustments. Even if we viewed this as a representation that salaries would not be raised subsequently, and we are not disposed to do so, the committee was not irrevocably bound by it. The mayor did not definitely limit his request to the council for additional school appropriations on the basis of the committee's letter, and there is no indication that the council conditioned its vote on that letter. Moreover we would hesitate to say that conduct which in private litigation might be treated as working an estoppel or waiver would defeat the exercise by a school committee of its public duties. See *Lincoln* v. *Giles,* 317 Mass. 185, 187 (laches does not run against public rights); *Sears* v. *Treasurer & Receiver Gen.* 327 Mass. 310, 327 (same). We hold that the school committee vote of August 31, 1951, was valid.

2. A further question is presented in the Collins case. The defendant contends that the plaintiff Collins is entitled

to the increases for himself and his assignors not in a lump sum, but only on an increment or step rate basis. This question does not arise with regard to the plaintiff Looney, since the compensation of the president was a fixed amount. It becomes necessary to determine what effect should be given to the school committee order of September 19, 1951, which declared that it was the intention of a majority of those who voted for the increases that they were not to be paid on an increment basis.

We are of opinion that the order of September 19, 1951, should not be considered in construing the vote of August 31. This is not a case where expressions of intent are necessary to clarify ambiguities in the original vote, for the language of that vote is explicit and unambiguous. The declaration of intent cannot be construed as a substantive amendment of the salary schedule, because, so construed, it would violate the provision in St. 1875, c. 241, § 5, as amended by St. 1933, c. 121, § 2, that the school committee "may fix the compensation of the teachers, but the salaries established at the commencement of each school year shall not be increased during such year."

The compensation schedule appearing in the August 31 vote was subject to the express limitation that "any person holding a position included in the foregoing salary schedule shall as of September 1, 1951, be placed on that step of said salary schedule corresponding to his or her years of service in the specified position, but in no such case shall the salary be reduced." This limitation plainly contemplates the computation of the increase on an increment basis.

Few of the faculty had sufficient years of service in their respective positions to be entitled to a higher position on the schedule, and thus to more pay, than the one assigned to them.[1] Therefore, the plaintiff Collins can recover nothing for himself or any of his assignors except as follows:

---

[1] We have not overlooked the fact that the school committee order of June 21, 1951, granted an increased salary schedule for assistant professors. Since it is clear that the schedule established by the vote of August 31, 1951, superseded the earlier schedule, the June 21 order had no operative effect, and does not affect the computation of damages.

$504 for Katharine E. Barr, $477.54 for A. Frances Brennan, $468.72 for Frances Burnce, $486.36 for Lulu A. Donovan, $504 for Alice Driscoll, $447.30 for M. Margaret Gaffey, $504 for Henry L. Gerry, $504 for F. Winifred Given, $493.92 for Miriam Kallen, $501.48 for M. Harvey Read, $497.70 for Margaret M. Salloway, and $497.70 for Caroline J. Trommer.

3. The defendant contends that the amounts due the plaintiffs must be reduced by a further sum, because Collins in one part of his declaration claims unpaid compensation for the period September 1, 1951, through June 11, 1952, and Looney in one part of his declaration claims unpaid compensation for the period September 1, 1951, through July 28, 1952, whereas the full contract year ran from September 1, 1951, to August 31, 1952. This contention is unsound. The plaintiffs elsewhere in their declarations claimed the full amount of unpaid compensation due to them. The stipulations of fact concerning all of the thirty-four faculty members establish that all services required by their contracts, with minor exceptions, were performed and that what, according to the defendant, was full compensation for the year was paid to them. Where, as here, the actions were submitted on a case stated, all questions of pleading are waived and the only question open is whether the plaintiffs can recover in any form of action. *Union Old Lowell Natl. Bank* v. *Paine,* 318 Mass. 313, 317. *North End Auto Park, Inc.* v. *Petringa Trucking Co. Inc.* 337 Mass. 618, 623–624. If the principle just stated were not applicable, the defect in the pleading, if there was one, could be cured by an amendment.

4. The orders for judgment for the defendant are reversed. Judgment will be entered for the plaintiff Collins in the amount of $5,886.72 with interest from the date of demand or, if there was no demand, from the date of the writ. Judgment will be entered for the plaintiff Looney in the amount of $1,636 with interest from the date of demand, or, if there was no demand, from the date of the writ. See *Cochrane* v. *Forbes,* 267 Mass. 417, 420–421. What the situation may be

in this respect is not apparent in the agreed facts and is to be determined by the trial court in case the parties cannot agree.

*So ordered.*