**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The SCAM INSTRUMENT CORPORATION, Respondent.**

**No. 16599.**

United States Court of Appeals
Seventh Circuit.

May 15, 1968.

Rehearing Denied June 26, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Burton L. Raimi, Attorneys, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, for petitioner.

George L. Plumb, Chicago, Ill., Peer Pedersen, Chicago, Ill., for respondent; Pedersen & Houpt, Chicago, Ill., of counsel.

Before KNOCH, Senior Circuit Judge, and CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court upon the petition of the National Labor Relations Board to enforce an order of the Board issued on May 8, 1967, against the respondent, The Scam Instrument Corporation. The Board's decision and order are reported at 163 NLRB No. 39.

The Board found and concluded that Scam violated Section 8(a) (5) and (1) of the National Labor Relations Act, as amended, by unilaterally modifying the benefit payment schedule of a group health insurance policy which Scam was required to carry for its employees under its collective bargaining agreement with the Union [1] representing the production and maintenance employees in Scam's Skokie, Illinois plant. The Board further concluded that the change in insurance benefits so effected constituted a modification of the collective bargaining agreement in violation of the requirements of Section 8(d) of the Act. The Board's order requires Scam to cease and desist from unilaterally modifying the existing terms and conditions of employment and from unilaterally modifying the collective bargaining agreement without complying with the provisions of Section 8(d). Affirmatively, the order requires Scam to remove, retroactively, the rider modifying the insurance benefits, to make its employees whole for any loss suffered, and to post designated notices.

The record discloses that the collective bargaining agreement between Scam and the Union covering the two year period ending September 1, 1966, contained a provision obligating Scam to maintain during such contract period certain insurance coverage for the employees represented by the Union. The particular coverages and the benefits payable were set forth in an attached schedule. The employee coverage was furnished at Scam's expense, but the monthly cost to an employee for medical and hospital services coverage for dependents was $9.82 for an employee with one family member, and $15.78 for an employee with two or more family members. Except in the case of the "major medical" coverage neither the bargaining agreement nor the insurance policy contained a "nonduplicating" provision allowing the benefits to be reduced by amounts the employee received from coinsurance obtained from other sources. Neither the agreement nor the policy reserved to Scam or its insurance carrier a right to modify the insurance coverage or benefits during the contract period.

In February 1965, without notification to or consultation with the Union, Scam and its insurance carrier agreed to the addition of a rider to the insurance policy. The rider issued in late February.

---

1. Local 1031, International Brotherhood of Electrical Workers, AFL–CIO.

It added a "nonduplicating" provision to the policy applicable to the medical and hospital services benefits. The rider provided for a reduction in the scheduled benefit payment in event a benefit was payable (or the item of hospital or medical service was furnished) because of like coverage of the employee or his dependent under some other group insurance or group benefit system involving participation by an employer in the form of contributions or payroll deductions. It provided like reduction in the scheduled benefit where the other benefit was due to coverage afforded by any statute.

The Union first became aware of the policy change in early May 1965, when a Scam employee reported receiving a reduced insurance payment, and upon investigation a Union representative discovered that the rider had been added to the policy. Scam's personnel manager when questioned about the change promised to investigate and assured that Scam would make restitution if shortages existed and that it was unnecessary to file a grievance. On May 18, Scam asked its insurance carrier to remove the rider retroactively from the policy. The carrier complied. This action, however, was not conveyed to the Union at the time, and on June 3, the rider was reinstated at Scam's request.

On June 30, pending differences concerning insurance benefits payable to two of Scam's employees remained unresolved and a grievance was filed under the grievance and arbitration provision of the contract. The grievance procedures culminated in the appointment of an arbitrator. The hearing before the arbitrator was postponed at the joint request of the parties pending disposition of the Board proceeding initiated by the July 14, 1965, charge filed by the Union.

■ Substantial evidence, on the record considered as a whole, establishes that the effect of the rider was to reduce substantially, in some instances, the insurance benefits otherwise receivable by employees where other insurance coverage existed in addition to that provided by Scam.

In support of its position in opposition to enforcement of the Board's order Scam states that the reason for the addition of the rider arose because of the increasing number of employed women who are covered by union negotiated insurance while at the same time being covered as a dependent under their husbands' union negotiated insurance and that an unintended dollar profit results from this double coverage which can in no way be considered as a bargained for employee benefit since it affects only a small number of employees and its payment does not flow from any of the traditional concerns that are normally an express subject of discussion between an employer and its employees. And on this basis, and the lack of disclosure by the record of any history of bargaining between the Union and Scam expressly directed to the factor of whether the employee insurance benefits should be either duplicating or nonduplicating, Scam argues that this particular phase of the employee insurance program does not fall within the scope of "other terms or conditions of employment" as that language has been construed and applied in cases such as Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 250–251, 12 A.L.R.2d 240 and W. W. Cross & Co. v. N. L. R. B., 1 Cir., 174 F.2d 875, 878. Scam contends that "there is a vast difference between an employer's duty to bargain concerning the existence or the extent of benefits to be provided by an insurance plan and an employer's duty to bargain concerning the dollar profit that may be received by an employee over and above the actual cost of the medical treatment received by the employee".

But here the issue presented does not concern mandatory duty to bargain. In its collective bargaining agreement with the Union Scam had agreed to the employee insurance program incorporating the specific benefit payments set forth in the schedule. The "basic" benefit payments so scheduled were not made subject to a qualification that duplicating insur-

ance coverage would serve to effect a reduction in the amounts otherwise allowable. And once the maintenance of that insurance program and the specific benefits payable thereunder became an obligation of Scam under its collective bargaining agreement that program and those benefits constituted a part of the terms and conditions of employment for the contract period involved.

■ Whatever merit or intrinsic equity a "nonduplicating" feature may possess, insofar as insurance programs maintained by different employers are concerned, is beside the point. The benefits here payable were frozen as a term or condition of employment for the contract period involved absent mutual consent of the contracting parties to their alteration or qualification, or compliance with the provisions of Section 8(d). They were not subject to the unilateral reduction Scam effected, without notice to or consultation with the Union, by means of the rider it requested of its insurance carrier. The reductions so effected were not without substantial impact although they affected only those of the employees who were the beneficiaries of additional employer-participating coverage and who happened to incur medical or hospital expenses covered by both of the insurance programs. We are of the opinion that the Board was correct in concluding that the unilateral change in benefits effected by Scam constituted an unfair labor practice violative of Section 8(a) (5) and (1) and of Section 8(d) of the Act.

■ And, the Board's power to entertain the charges and to afford a remedy for the unfair labor practice found to exist was not precluded by the availability or the invocation of the contract's grievance and arbitration provisions. Carey v. Westinghouse, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320; N. L. R. B. v. Acme Industrial Co., 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495.

Accordingly, it is ordered that the order of the Board be enforced.

Enforcement ordered.