JOHN J. KERRIGAN & others, trustees, & others, *vs.* CITY
OF BOSTON.

Suffolk. November 4, 1971. — January 27, 1972.

Present: TAURO, C. J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*School and School Committee. Boston. Insurance,* Health insurance.
*Municipal Corporations,* Collective bargaining, Insurance, Munici-
pal finance. *Statute,* Construction. *Contract,* Collective bargain-
ing contract. *Words,* "Wages," "Health insurance."

St. 1875, c. 241, § 5; G. L. c. 71, § 38, and c. 149, § 178I, authorized a
provision of a collective bargaining agreement between the school
committee of Boston and a teachers' union for certain payments
by the city out of funds appropriated for school purposes into a
fund established for the benefit of the teachers rather than directly
to the teachers. [26–29]
The construction given by the Federal courts to certain words in a
Federal statute was to be given to substantially the same words in a
Massachusetts statute subsequently enacted. [27–28]
Where an insurance program, adopted by the trustees of a fund estab-
lished for the benefit of public school teachers of a city pursuant to
a collective bargaining ·agreement between the school committee
and a teachers' union providing for payments into the fund by the
city, included sickness and accident benefits of $150 a week for as
long as fifty-one weeks for each hospital stay, such benefits did not
come within the phrase "hospital, surgical, medical, dental, and
other health insurance" in G. L. c. 32B, § 15, and did not violate
§ 15; the phrase "and other health insurance" means the "optional
medicare extension" program established by § 11C, which does
not include the sickness and accident benefits in the trustees' pro-
gram. [29–30]
Where a collective bargaining agreement between the school com-
mittee of a city and a teachers' union provided for the establishment
of a fund for the benefit of the teachers and required payments
by the city into the fund, but the city unjustifiably refused to make
the payments, a further provision of the agreement, in substance
that if the fund were not established prior to a certain time the
required payments should be made to the teachers as wages, could
not, in view of the city's refusal, be used by the city as a basis
for making payments to the teachers; the city in the circumstances
should be ordered in a suit in equity against it to make the pay-
ments into the fund. [32–33]
G. L. c. 149, § 178I, authorized a school committee to enter into a col-
lective bargaining agreement with a teachers' union containing a
provision for certain payments in two successive school years.
[34]

BILL IN EQUITY filed in the Superior Court on May 16, 1969.

The suit was heard by *Mitchell, J.*

*Albert L. Goldman (John F. McMahon* with him) for the plaintiffs.

*William H. Kerr* for the defendant.

BRAUCHER, J. The plaintiffs are the trustees of the Boston Teachers Union Health and Welfare Fund (the Fund), the president and executive secretary of the Boston Teachers Union, Local 66, American Federation of Teachers, AFL–CIO (the union), and an individual teacher who is a beneficiary of the Fund. They sought a decree under G. L. c. 231A declaring that the defendant city of Boston (the city) is empowered to make certain payments to the Fund as agreed in a collective bargaining agreement made between the union and the city, acting through the Boston School Committee (the school committee), and that such payments are not subject to G. L. c. 32B, § 15.

The city admitted the facts alleged in the plaintiffs' bill, and the matter was submitted to a judge of the Superior Court as a case stated. The judge made findings of fact, declaration of law and order for decree, and a final decree was entered providing that (1) the agreement obligated the school committee to make certain payments to the Fund, (2) the trustees could validly provide certain benefits from the Fund, by insurance or otherwise, (3) payment for certain other benefits was forbidden, and (4) the payments agreed to be made to the Fund should instead be paid forthwith to each "Covered Teacher." All parties have appealed.

We summarize the facts. On August 14, 1968, pursuant to G. L. c. 149, §§ 178G–178N, the union had been duly recognized as the exclusive bargaining agent for some 4,500 teachers in the public schools of the city. On that date the union and the school committee entered into a collective bargaining agreement concerning wages, hours and other conditions of employment during the

school year, September 1, 1968, through August 31, 1969. As part of the collective bargaining agreement the parties agreed to establish the Fund in accordance with a Health and Welfare Fund Agreement. (the Fund Agreement) signed contemporaneously, and the school committee agreed to pay into the Fund $50 a teacher in September, 1968, and $100 a teacher in September, 1969.

On December 23, 1968, the school committee and the union executed an Agreement and Declaration of Trust — Boston Teachers Union Health and Welfare Fund (the Trust Agreement), and the school committee voted to expend out of the unexpended balance of a valid appropriation the amounts necessary to make the agreed payments to the Fund for 1968. The city then took the position that such an expenditure would not be for a permissible municipal purpose. On March 20, 1969, the Trustees of the Fund (the five members of the school committee and five persons appointed by the union) voted to adopt an insurance program. An insurance carrier agreed to issue a policy to carry out that program, but it was not issued because the city refused to make the expenditure. This suit followed.[1]

1. The judge ruled that the power given to the school committee to fix the compensation of the teachers and to elect and contract with teachers empowered the city to make the agreed payments to the Fund out of funds appropriated for school purposes. The city concedes that St. 1875, c. 241, § 5, empowers the school committee to "fix the compensation of the teachers." See *Collins* v. *Boston*, 338 Mass. 704, 707–709. But it contends that this power is limited to the payment of money directly to the teacher and hence does not include payments to third persons for the teacher's benefit.

We think there is no such limitation. "The power of school committees to 'contract with the teachers of the

---

[1] The suit was begun in May, 1969, and tried in June, 1969. The judge made findings of fact, declaration of law and order for decree on January 21, 1970. A final decree was entered February 26, 1971, but it was revoked and the decree appealed from was entered on March 11, 1971.

public schools' and to engage in collective bargaining for
the purpose of setting 'wages, hours and other conditions
of employment' is fixed by statute. G. L. c. 71, § 38, as
amended through St. 1965, c. 164. G. L. c. 149, § 178I,
as amended through St. 1969, c. 341. The complete and
exclusive nature of the authority to contract has been
long established in our case law. *Watt* v. *Chelmsford,*
323 Mass. 697, 700, and cases cited. *Attorney Gen.* v.
*Ware,* 328 Mass. 18, 20. *Lynch* v. *Fall River,* 336 Mass.
558, 559. *Collins* v. *Boston,* 338 Mass. 704, 707." *Fitch-
burg Teachers Assn.* v. *School Comm. of Fitchburg,* 360
Mass. 105, 106–107. In the *Fitchburg* case we held that
a salary adjustment for the final year of service before
retirement, "part of the over-all package of services and
benefits worked out by the parties pursuant to collective
bargaining and embodied in the contract, was a valid
exercise by the committee of its power to set wages."
Compare *Averell* v. *Newburyport,* 241 Mass. 333, 335
(paid sick leave) ; *Attorney Gen.* v. *Woburn,* 317 Mass.
465, 467 (bonus) ; *Matter of Teachers Assn.* v. *Board of
Educ.* 34 App. Div. 2d (N. Y.) 351 (death benefits based
on unused sick leave) ; *Providence Teachers Union* v.
*School Comm. of Providence,* 108 R. I. 444 (retirement
benefit based on unused sick leave).

The phrase "wages, hours and other conditions of em-
ployment" in G. L. c. 149, § 178I, inserted by St. 1965,
c. 763, § 2, was taken from § 8 (d) of the National Labor
Relations Act, inserted in 1947, where the phrase is
"wages, hours, and other terms and conditions of em-
ployment." 61 Stat. 140, 142, as amended, 29 U. S. C.
§ 158 (d) (1970). See also the State Labor Relations
Law, G. L. c. 150A, § 1, inserted by St. 1938, c. 345, § 2,
where the phrase is "wages, hours or other working con-
ditions." "The adjudged construction by the Federal
courts is to be given to the subsequent enactment by the
Legislature. *Thibault* v. *Lalumiere,* 318 Mass. 72, 75,
and cases cited." *Poirier* v. *Superior Court,* 337 Mass.
522, 527. See *Wheaton College* v. *Labor Relations
Commn.* 352 Mass. 731, 738; *City Manager of Medford*

v. *State Labor Relations Commn.* 353 Mass. 519, 522. Federal decisions prior to the enactment of G. L. c. 149, § 178I, had established that for collective bargaining purposes "wages" may include payments to third parties. *Inland Steel Co.* v. *National Labor Relations Bd.* 170 F. 2d 247, 253–255 (7th Cir.), cert. den. 336 U. S. 960 (retirement and pension plan). *W. W. Cross & Co. Inc.* v. *National Labor Relations Bd.* 174 F. 2d 875, 878 (1st Cir.) (group health and accident insurance program). *National Labor Relations Bd.* v. *General Motors Corp.* 179 F. 2d 221 (2d Cir.) (group insurance). *Potlatch Forests, Inc.* v. *International Woodworkers of Am.* 108 F. Supp. 906, 907–908 (D. Idaho), affd. per cur. 200 F. 2d 700 (9th Cir.) (group insurance). See *National Labor Relations Bd.* v. *Scam Instrument Corp.* 394 F. 2d 884, 886–887 (7th Cir.). Compare decisions that such payments are not "wages . . . due to workmen" under the Bankruptcy Act. *United States* v. *Embassy Restaurant, Inc.* 359 U. S. 29, 33. *Joint Indus. Bd. of Elec. Indus.* v. *United States,* 391 U. S. 224. But cf. *Matter of E. V. Moore of Cal. Inc.* 447 F. 2d 1106 (9th Cir.), cert. den. sub nom. *Bowman* v. *Bay Area Painters Trust Fund,* 404 U. S. 995 (fund for vacation and holiday pay).

Payments to the Fund have no different impact on the city from direct payments to the teachers. But provisions for payment to third persons may be very much in the teachers' interest. This is not a case of payment of wages in scrip redeemable only at the company store. Compare G. L. c. 149, § 148. Direct payment may result in substantial tax burdens which can be avoided if the teachers cannot receive the money. The theory of G. L. c. 149, §§ 178G–178N, is that the interests of the municipal employees are adequately safeguarded by collective bargaining through representatives of their own choosing. No objection is made to the reasonableness of the provisions of the collective bargaining agreement, the Fund Agreement, or the Trust Agreement. The agreed payments appear to be modest in amount and intelligent

in purpose.   We conclude that the agreed payments to the Fund are within the powers of the school committee.

2.  Appendix A to the Fund Agreement authorizes the trustees of the Fund to provide health and welfare benefits including "weekly accident and sickness benefits." The insurance program adopted by the trustees included sickness and accident benefits of $150 a week for as long as fifty-one weeks for each hospital stay.   The city argues that such benefits violate G. L. c. 32B, § 15, inserted by St. 1967, c. 373, § 2,[2] since they constitute "other health insurance."   The judge accepted the plaintiffs' contrary contention that the Fund's proposed "income protection insurance" did not come within the phrase "hospital, surgical, medical, dental, and other health insurance" as used in c. 32B.

We think the judge was right.   Insurance providing weekly sickness benefits is undoubtedly "insurance upon the health of individuals" under G. L. c. 175, § 47, Sixth (d).   Weekly accident benefits during a hospital stay may conceivably fall in the same category, although they are more naturally treated as insurance "against bodily injury . . . by accident" under G. L. c. 175, § 47, Sixth (a).   See *Mutual Benefit Health & Acc. Assn.* v. *United Cas. Co.* 142 F. 2d 390, 394 (1st Cir.), cert. den. 323 U. S. 729.   But the phrase "and other health insurance" as used in c. 32B appears to have a specialized meaning limited to an "optional medicare extension" supplementing the Federal Health Insurance for the Aged Act, 42 U. S. C. §§ 1395–1395ll (1970), enacted in 1965.   See *Bay State St. Ry.* v. *Woburn,* 232 Mass. 201, 203; *St. George's Church* v. *Primitive Methodist Church,* 315 Mass. 202, 205–206, and cases cited.

---

[2] Section 15 is as follows: "No governmental unit may appropriate or expend public funds for the payment of premiums for group life insurance, group accidental death and dismemberment insurance and group general or blanket hospital, surgical, medical, dental, and other health insurance for its active or retired employees, or their dependents, unless such insurance is procured pursuant to the provisions of this chapter, or unless such payments are for part of the premiums for group life insurance for permanent employees as authorized by clause (44) of section five of chapter forty."

The phrase "and other health insurance" was introduced in c. 32B by St. 1965, c. 841, entitled "An Act to provide a contributory group hospital, surgical, medical and other health insurance program to be known as optional medicare extension to active and retired employees of certain counties, cities, towns and districts as a supplement to the federal health insurance for the aged act." Section 2 (i) of c. 32B, added by the 1965 statute, defines "optional medicare extension" as "a program of hospital, surgical, medical, dental and other health insurance for . . . employees . . . eligible or insured under the federal health insurance for the aged act . . . ." At the same time the phrase "hospital, surgical and medical benefits" was changed to "hospital, surgical, medical and other health insurance benefits" or "hospital, surgical, medical and other health insurance" in §§ 4, 5, 9 and 11, and a new § 11C provided for such insurance, "to be known as optional medicare extension." When § 15 was added in 1967, it used the same phrase previously used in the definition of "optional medicare extension." The optional medicare extension program for the city does not include any such weekly sickness and accident benefits as those included in the program adopted by the trustees, but is limited to direct payment of or reimbursement for charges by hospitals, doctors, nursing homes, and the like.

3. The insurance program voted by the trustees of the Fund also included a provision for "severance pay" of $2,500 in the event of accidental death. "Severance pay" is a misnomer, and the judge was plainly right in ruling that it is in fact accidental death insurance. Under G. L. c. 32B, § 15, the city is forbidden to pay premiums for such insurance. But it has not done so, nor has it agreed to do so. Payments to the Fund in accordance with the collective bargaining agreement would not be payments of insurance premiums. If, as the city contends, the trustees of the Fund act "as trustees under the declaration of trust rather than as public officers," and money once paid to them "is out of the City's control and superintendence," it seems fairly arguable that a payment of

insurance premiums by them is not a payment by a "governmental unit" made out of "public funds" in violation of § 15. On the other hand, it is also fairly arguable that such a conclusion violates the purpose and policy of § 15 of "containing the cost of insurance programs" so that "municipalities may not provide a level of benefits greater than that afforded by their county and the county may not exceed the State's level of benefits." See Third Report of the Special Commission on Implementation of the Municipal Home Rule Amendment to the State Constitution, Senate No. 1174, March 31, 1967.

The problem of fitting the statute governing collective bargaining for public employees into preëxisting statutes which overlap with it is not a new one. See *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 499. If there is a conflict, G. L. c. 149, § 178I, provides that the conflicting law prevails over the collective bargaining agreement. But we need not pursue this issue further in this case. Once money is paid into the Fund, it is not clear that the city has a continuing interest in it or is a proper party to insist that the Fund be lawfully administered. In the present case the judge ruled against the trustees. Although they have appealed and have argued in the abstract that their powers are not limited by G. L. c. 32B, § 15, they have made no argument specifically directed to the $2,500 accidental death benefit and have asked us to affirm the decree without seeking any modification with respect to that benefit. We think this amounts to acquiescence in that part of the decree, and that there is no longer a continuing controversy with respect to it.[3]

The judge also ruled that the provisions of Appendix A to the Fund Agreement for the payment or provision of hospital, surgical, medical, dental, preventive, prescriptions, drugs, appliances, dental and optical benefits, or for direct or indirect payments for group life insurance, group

[3] Thus we need not consider on this record the problems which may arise if a collective bargaining agreement is used as a method of evading a well defined statutory policy. Such problems may properly be left for a case where the record and arguments adequately present the issue sought to be raised.

accidental death and dismemberment insurance, and group general insurance are void as in conflict with G. L. c. 32B, § 15. Except for the weekly sickness and accident benefits and accidental death benefits discussed above, the record before us does not indicate that these provisions have been implemented by the trustees of the Fund or that there is any actual or continuing controversy with respect to them. The parties have not directed their arguments to these provisions, and we do not believe we should pass on their validity in the abstract. G. L. c. 213A, §§ 1, 3, 8.

In the circumstances we think it appropriate to modify the decree by striking from the next to the last paragraph everything except the provisions with respect to "income protection benefits."

4. The judge ordered that the city pay forthwith to each "Covered Teacher" the agreed amounts with interest. This was stated to be in accordance with § 9 (f) (14) (c) of the Fund Agreement: "In the event that this Agreement does not result in an operating Fund by January 15, 1969, the amounts provided in Section 3 shall be paid to Covered Teachers as wages for the 1968–1969 school year; and the amounts in Section 5 shall be so paid for the 1969–1970 school year if the Fund is not in operation by January 15, 1970." The plaintiffs argue that there was an operating Fund after December 23, 1968, and that in any event payment should be ordered to be made to the Fund rather than to the teachers.

We need not pass on the meaning of the phrase "operating Fund," for we think payment should be made to the Fund in any event. Section 9 (f) (14) (c) was plainly included in the Fund Agreement, not for the benefit of the city, but for the benefit of the teachers, to assure that if the Fund were not created the city would not be unjustly enriched. The decree for direct payment to the teachers might have been appropriate if it were unlawful for the city to make payments to the Fund. But here the city unjustifiably refused to make the agreed payments. Using that refusal as a basis, it seeks to frustrate

the main purpose of the Fund Agreement. This it cannot do. "One cannot himself put it out of the power of the other party to comply with a stipulation, and then avail himself of the noncompliance." *Eliot Natl. Bank* v. *Beal,* 141 Mass. 566, 568. *Holt* v. *Silver,* 169 Mass. 435, 455–456. See *Ravage* v. *Johnson,* 316 Mass. 558, 562. Restatement: Contracts, § 295. The agreement is to be read "in a manner to give effect to the chief design to be accomplished by the instrument," and we are to look "through the form to the substance and purpose of the agreement" and to mould the decree "in accordance with what the parties may fairly be presumed to have intended. Every contract implies good faith and fair dealing between the parties to it." *Clark* v. *State St. Trust Co.* 270 Mass. 140, 152–153. *Gil-Bern Constr. Corp.* v. *Medford,* 357 Mass. 620, 623–624.

5. The city argues that the school committee, unlike most school committees, had the power to make appropriations for school purposes. St. 1936, c. 224, as amended by St. 1949, c. 117, and St. 1963, c. 786. *Collins* v. *Boston,* 338 Mass. 704, 708–709. Therefore, it argues, G. L. c. 71, § 34, was not "operative" in the city within the meaning of the last sentence of G. L. c. 149, § 178I, and it was mandatory that a "request for the necessary appropriation . . . be submitted to the legislative body." [4] In the absence of such a request and such an appropriation for the year 1969–1970, the argument continues, any payments ordered by the decree should cover nothing but the 1968–1969 school year. Alternatively, if G. L. c. 71, § 34, is "operative" in the city, it is argued that a proceeding under that statute is the exclusive remedy. *Callahan* v. *Woburn,* 306 Mass. 265, 273–278.

---

[4] The last three sentences of § 178I are as follows: "If funds are necessary to implement such written agreement, a request for the necessary appropriation shall be submitted to the legislative body. If such request is rejected, the matter shall be returned to the parties for further bargaining. The preceding two sentences shall not apply to agreements reached by school committees in cities and towns in which the provisions of section thirty-four of chapter seventy-one are operative."

The collective bargaining agreement, containing provisions for payments in two successive school years, was within the authority granted by G. L. c. 149, §178I, as amended by St. 1967, c. 514, § 2, under which it could not "exceed a term of three years." We need not discuss further any issues with respect to 1969 appropriations. The facts with respect to such issues are not included in the case stated to which the city agreed, and no such issues are included in the controversy specifically set forth in the pleadings (G. L. c. 231A, § 1), or mentioned by the judge. Any such issues have been waived by the city and are not properly before us. See *Socony Mobil Oil Co. Inc.* v. *Cottle,* 336 Mass. 192, 196. Compare *Pitman* v. *J. C. Pitman & Sons, Inc.* 324 Mass. 371, 373–374.

6. The final decree is modified (1) by striking from the next to the last paragraph the letter "(a)" and everything after and including the words "and (b)," leaving only the provision that the Fund is valid to provide income protection benefits in the amounts described, and (2) by striking out the last paragraph and substituting the following: "It is Further Ordered that the City of Boston pay forthwith to the Boston Teachers Union Health and Welfare Fund the amounts provided in paragraphs 3 and 5 of the Health and Welfare Fund Agreement dated August 14, 1968, with interest from the dates when those amounts were required by those paragraphs to be paid." As so modified, the decree is affirmed.

*So ordered.*