LIBERTY MUTUAL INSURANCE COMPANY *vs.* COMMISSIONER
OF INSURANCE
(and two companion cases[1]).

Suffolk. May 9, 1985. — August 26, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Insurance*, Motor vehicle insurance. *Husband and Wife*, Consortium. *Damages*, Loss of consortium, Loss of companionship and society. *Commissioner of Insurance*.

The Commissioner of Insurance, although giving no specific notice or opportunity to be heard with respect to his decision, acted lawfully in directing that the standard form of compulsory private passenger automobile insurance policy during 1985 provide less coverage for certain claims involving loss of consortium and loss of parental companionship and society than did the 1984 policy, and the authority of the Commissioner could not be limited by the absence of a filing, by or on behalf of any insurer, of a proposed form of 1985 policy containing such a change in coverage. [771-772]

Discussion of the standing of individual purchasers of compulsory private passenger automobile insurance policies, and their minor children, to challenge the legality of action by the Commissioner of Insurance reducing the coverage provided by such policies issued during 1985 from that provided in 1984. [772-774]

When this court held, in *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537 (1984), that persons claiming damages for loss of consortium or for loss of parental companionship and society were entitled to a separate "per person" recovery within the "per accident" limit of the standard form of compulsory private passenger automobile insurance

---

[1] Mothers Against Drunk Driving, Inc., Carol Lawlor, & Richard Shire *vs.* Commissioner of Insurance; and Jessica Jarzembowski & Carrie Ann Jarzembowski by their parents, Ann Marie & Stanley Jarzembowski *vs.* Commissioner of Insurance. We shall refer to the plaintiffs in these companion actions as the individual plaintiffs. The Jarzembowskis were defendants in Royal Ins. Co. of America v. Jarzembowski, a companion case to *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537 (1984), which we discuss extensively in this opinion. Except for the minor daughters of the Jarzembowskis, each plaintiff in the companion cases is a purchaser of a 1985 Massachusetts private passenger automobile insurance policy.

policy, its decision was not based upon statutory construction but, rather, dealt with ambiguous language in policies issued during certain years; consequently, it lay within the discretion of the Commissioner, in a later year, to resolve the ambiguity by mandating a change in the relevant policy language. [774-775]

Comment by the court on factors relating to a determination whether provisions of G. L. c. 175, § 113A, requiring that policyholders be given notice of coverage reductions, would be applicable to a change in the standard form of compulsory private passenger automobile insurance policy which reduced coverage for certain claims for loss of consortium, and loss of parental companionship and society, where the change had been mandated by the Commissioner of Insurance in an announcement December 17, 1984, and was to take effect January 1, 1985. [775-776]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on February 1, February 4, and February 6, 1985, respectively.

The cases were reported by *Abrams*, J.

*Arthur F. Licata* for Mothers Against Drunk Driving, Inc., & others.

*Acheson H. Callaghan, Jr.*, for Liberty Mutual Insurance Company.

*Robert J. Carnevale* for Jessica Jarzembowski & another.

*Stephen S. Ostrach*, Assistant Attorney General, for the Commissioner of Insurance.

WILKINS, J. At the heart of these actions is the question whether the Commissioner of Insurance (commissioner) lawfully directed that each policy providing compulsory private passenger automobile insurance during 1985 offer less coverage of certain claims involving loss of consortium than did the comparable 1984 policy. Liberty Mutual Insurance Company (Liberty), which annually issues thousands of Massachusetts private passenger automobile insurance policies, questions the commissioner's authority to implement a reduction in the 1985 policy's coverage without Liberty (or some entity acting on its behalf) first filing for approval a proposed policy form containing such a change in coverage. Liberty asserts that, if the commissioner had no authority unilaterally to order a reduc-

tion in the scope of compulsory private passenger automobile coverage, the 1985 compulsory private passenger automobile rates he established under G. L. c. 175, § 113B (1984 ed.), are too low, and, therefore, those rates must be redetermined. The individual plaintiffs, whose standing to sue we discuss subsequently, contend that, without legislative action, the scope of the 1985 compulsory private passenger automobile insurance coverage of claims involving loss of consortium cannot be reduced from the level stated in the 1984 policy and established by this court's interpretation of the relevant language set forth in the 1984 and prior policies. See *Bilodeau v. Lumbermens Mut. Casualty Co.*, 392 Mass. 537 (1984).

We conclude that, although the procedures followed by the commissioner in achieving a reduction in the policy's coverage are hardly a model of well-ordered administrative behavior, his action lawfully reduced the scope of the 1985 policy's coverage. In reaching this conclusion, we determine, as we suggested in our *Bilodeau* opinion, that the scope of the coverage of claims involving loss of consortium provided under the basic limits of the 1985 private passenger automobile policy could properly be reduced without legislative action. *Bilodeau, supra* at 545 n.9.

These actions were commenced by the filing of complaints in the Supreme Judicial Court for the county of Suffolk and have reached the full court on reservation and report by a single justice on the pleadings, a statement of agreed facts, and portions of the record before the commissioner in the hearing on 1985 compulsory motor vehicle insurance rates. The commissioner has moved to dismiss the actions and has filed an answer in each case.[2]

The issues in these appeals have their origins in two circumstances. The first is the recent establishment in this Commonwealth of the principle that a spouse and minor children of a victim of tortious negligence may recover damages in

---

[2] In the Jarzembowski case, the commissioner filed no motion to dismiss, but in his answer he asserted the untimeliness of the action under G. L. c. 175, § 113B.

their own right for loss of consortium. The second is the use in the compulsory private passenger automobile insurance policy, for years immediately prior to 1985, of ambiguous language concerning the extent of the coverage of claims made by an injured plaintiff, a spouse, and minor children. The law of the Commonwealth for many years in this century did not recognize consortium claims. See *Feneff* v. *New York Cent. & H.R.R.R.*, 203 Mass. 278, 281 (1909); *Lombardo* v. *D.F. Frangioso & Co.*, 359 Mass. 529, 529-530 (1971) (four-to-three decision). In 1973, this court recognized the right of one spouse to recover damages for loss of consortium arising from a negligent injury to the other. *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 154-165 (1973). Seven years later, we recognized the right of a minor child to recover for the negligently caused loss of a parent's companionship and society. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 516 (1980). A loss of consortium claim is said to be independent of the damage claim of the physically injured spouse or parent (*Feltch* v. *General Rental Co.*, 383 Mass. 603, 606 [1981]), but at the same time there is a "pervasive interrelationship." *Filder* v. *E.M. Parker Co.*, 394 Mass. 534, 548 (1985). See *Diaz* v. *Eli Lilly & Co.*, *supra* at 162.

Obviously, the change in the common law principles governing claims for loss of consortium had an effect on insurers providing protection in Massachusetts against motor vehicle tort claims. One apparent question was whether the maximum coverage of the combined claims of the physically injured person and his consorts would be dictated by the "per person" limits of the policy coverage or only by the larger "per accident" limits of the policy. In terms of the current compulsory motor vehicle insurance limits, the question is whether the $10,000 limit "on account of injury to or death of any one person" controls the insurer's exposure to loss or whether the $20,000 limit "on account of any one accident resulting in injury to or death of more than one person" controls. See G. L. c. 90, § 34A (1984 ed.). The issue did not reach this court until 1984, when in one opinion we decided two cases involving claims for physical injuries to one claimant and for loss of consortium which, in each case, collectively exceeded

the per person limit of the applicable policy. *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 382 Mass. 537 (1984).

In the *Bilodeau* case, we concluded that "under the current wording of the policy a loss of consortium claimant is a separate 'person' entitled to an independent 'per person' recovery within the 'per accident' limit." *Id.* at 538. We reached our decision by construing ambiguous language in the insurance policies and did not base our decision on G. L. c. 90, § 34A, which defines the scope of coverage under a motor vehicle liability policy. We noted that the issue arose because neither the statute nor the policy resolved the question explicitly. *Id.* at 545 n.9. We suggested that the problem may have arisen because the statute and the policy failed "to keep pace with the evolution of the cause of action for loss of consortium." *Id.* We suggested further that insurers and insureds would both benefit from clarification of the issue either by a statutory amendment or by a change in the policy language with "permission of the Commissioner of Insurance." *Id.* The reference to "permission of the Commissioner of Insurance" concerns the process we discuss below by which a proposed policy form must be filed with the commissioner before it may be issued.

Implicit in these comments in our *Bilodeau* opinion was the premise that no statute dictated the result we reached in that case and that a lawfully implemented change in the policy language could change the *Bilodeau* result so that the "per person" limit of the policy would apply to all claims, including consortium claims, arising from injury to one person. The commissioner and Liberty agree that a change in language in the policy could lawfully alter the scope of coverage of consortium claims. They differ, however, on the question whether the manner in which the commissioner dictated the change was proper.[3]

On October 2, 1984, the commissioner commenced the hearing on 1985 compulsory motor vehicle insurance rates required

---

[3] If the dictated change was lawful, Liberty's challenge to the private passenger automobile rates fixed by the commissioner becomes irrelevant. If, however, the dictated change was not lawful, the matter would have to be returned to the commissioner to consider the consequences of the greater loss exposure resulting from the continued application of the policy language considered in the *Bilodeau* case.

by G. L. c. 175, § 113B. The hearing continued through October and November into December. On December 17, the forty-sixth day of the hearing, after the hearing had been closed on issues concerning losses and expenses but was continuing on other matters, the commissioner announced in an offhand way at the end of the day's proceedings that he intended to eliminate any effect of the *Bilodeau* decision.[4] The commissioner gave no specific notice or opportunity to be heard on this decision. Counsel for the insurance companies raised no objection to the commissioner's statement. As far as the record indicates, no party to the proceeding objected at any time to the commissioner's determination to eliminate any effect of the *Bilodeau* decision. In fact, with apparent acquiescence and certainly without objection to the commissioner's decision, the insurance companies thereafter submitted exhibits containing their rating bureau's final rate level recommendations showing the effect of the elimination of the consequences of the *Bilodeau* decision.[5] It is stipulated, however, that on December 27, 1984, an employee of the companies' rating bureau informed the Division of Insurance that the bureau did not intend to file any new policy language for 1985. On December 31, 1984, the commisioner on his own approved a 1985 mandatory endorsement purporting to eliminate the effect of the *Bilodeau* decision for 1985.[6]

---

[4] The commissioner said, "I have one piece of news I might as well say on the record. With respect to the Bilodeau effect, I am going to do what I can to remove that effect by changing policy. That will require, obviously, meetings between the Division attorneys and the Industry, specifically the MARB [Massachusetts Automobile Rating Bureau]." Counsel for the companies inquired as to the effective date, and the commissioner said it would be effective January 1, 1985.

[5] Counsel for the companies and the rating bureau submitted two sets of recommendations on December 21, 1984, with the following comment: "One set includes the MARB's recommended adjustment for the effect of the *Bilodeau* case; the other set excludes the adjustment for the *Bilodeau* effect, since you have indicated that the Division will alter the standard policy, effective January 1, 1985, to preclude recovery under the *Bilodeau* rule."

[6] The new policy language provides as follows: "The most we will pay for injuries to one or more persons as a result of bodily injury to any one person in any one accident is $10,000. Subject to this $10,000 limit, the most we will pay for injuries to two or more people as the result of bodily injury to two or more people in any one accident is $20,000."

1. We consider first, and reject, Liberty's argument that the commissioner unlawfully dictated the scope of coverage of consortium claims in the manner he did in this case. We shall assume that any objection to the commissioner's action was not waived by or on behalf of Liberty.

Liberty is correct in asserting that the normal and proper pattern to follow in settling the form of a compulsory motor vehicle liability insurance policy is for a company (or its representative, such as a rating bureau) to file a form of the policy with the commissioner. G. L. c. 175, § 113A (1984 ed.). The commissioner may then approve the form of the policy or disapprove it, and, if he takes no action within thirty days of the filing, the policy may be used. *Id.* It is clear under § 113A, however, that the commissioner has the power to disapprove a proposed form of policy that does not conform to the laws of the Commonwealth.

In the scheme of compulsory motor vehicle rate making under G. L. c. 175, § 113B, the commissioner has to know what the loss exposure, or coverage, will be in order to fix proper rates. As between the commissioner and the companies selling compulsory motor vehicle liability insurance, it is the commissioner who must have and has the determinative voice in deciding what the scope of the compulsory coverage will be, in instances in which G. L. c. 90. § 34A, does not provide the answer. He must, therefore, be able to determine the substance of that policy language which affects coverage and thus affects the loss portion of the rates he is to fix.

Nothing in § 113A concerning the submission of policy forms can be fairly read to limit the necessary authority of the commissioner to define the scope of coverage. The commissioner would have to disapprove any policy form submitted with compulsory coverage provisions inconsistent with those on which he relied in fixing rates. The parties have stipulated that every insurance company writing private passenger automobile insurance policies must use the standard form approved by the commissioner. See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985); *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984). No doubt 1985

compulsory private passenger liability insurance policies had to be filed pursuant to G. L. c. 175, § 113A, but the insurers had no choice when it came to whether the "*Bilodeau*" language was to remain in the policy or new language dictated by the commissioner (at least as to its substance) was to replace that language. The commissioner made that decision and that was the end of the matter. In this respect, the authority of the commissioner was not and could not be limited by the absence of any filing of a 1985 policy form on behalf of Liberty or any other insurer.[7]

2. The concerns of the individual plaintiffs are different from those of Liberty. The individual plaintiffs contend that the commissioner had no authority to reduce coverage in any circumstances. They claim that G. L. c. 90, § 34A, states compulsory coverage under a motor vehicle liability policy so as to require coverage of consortium claims in just the way we stated in our *Bilodeau* decision. This contention runs counter to the implication of our statement in the *Bilodeau* case (392 Mass. at 545 n.9) that the ambiguity in the policy could be resolved by a change in the policy language. This contention is also inconsistent with the position taken by the commissioner in acting as he did and with Liberty's argument that the policy change could be made but only if done in the proper way. This

[7] The commissioner argues that his determination to require a policy change to eliminate the effect of the *Bilodeau* decision was made independently of the 1985 compulsory insurance rate proceeding conducted under G. L. c. 175, § 113B, and that, therefore, Liberty may not challenge that determination by an appeal under § 113B. Liberty has, however, also sought declaratory relief under G. L. c. 231A, which may be an appropriate way to challenge the commissioner's order dictating the 1985 policy change. In any event, the connection between the compulsory private passenger insurance rate level determination and the mandated policy change is sufficiently direct to permit the question of the lawfulness of the commissioner's mandate to be decided in an appeal under § 113B. The commissioner announced the intended policy change in the course of the hearing on compulsory rates. Each principal participant before the commissioner proposed an increase in the relevant claim cost trend factors to reflect the consequences of the *Bilodeau* decision. If the commissioner had been wrong as a matter of law in dictating a policy change, his selected compulsory private passenger rate level would probably have been too low and, in any event, his decision would have had to have faced the issue.

contention must also be assessed in light of the fact that, when G. L. c. 90, § 34A, was first enacted by St. 1925, c. 346, § 2, consortium claims based on claims of negligence were not recognized in the Commonwealth.

Before we discuss the claim of the individual plaintiffs that the commissioner had no right to define the policy coverage of consortium claims contrary to statutory direction, we must consider the commissioner's motion that the complaints of the individual plaintiffs be dismissed because they lack standing under G. L. c. 175, § 113B, to challenge his decision.[8] The individual plaintiffs, unlike Liberty, are not even conditionally challenging rates fixed pursuant to § 113B. Nor are they challenging any action, order, finding, or decision of the commissioner under § 113B. Hence, their appeals under § 113B could not properly raise a challenge to the policy language mandated by the commissioner. The commissioner's motion to dismiss is, therefore, well taken.

The individual plaintiffs would no doubt be entitled to amend their complaints. If they were to allege an appeal pursuant to § 113A, concerning policy forms, they would face the difficulty that this record does not show that the commissioner has approved or disapproved any form of policy filed with him. Nor is it clear that a prospective policyholder has any right to appeal under G. L. c. 175, § 113A, from action (or inaction) of the commissioner. If the individual plaintiffs were to seek declaratory relief challenging the commissioner's approval of what they regard as an unlawful form of policy, possibly they would state a sufficient controversy to warrant the granting of declaratory relief, even if no claim against any individual plaintiff had yet been asserted that made the policy change significant. See *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293-294

---

[8] The action brought by the Jarzembowskis was not commenced within twenty days of the commissioner's decision as required by G. L. c. 175, § 113B. They have moved to intervene in the other action seasonably brought by the other individual plaintiffs. We allow that motion. We shall treat the commissioner's motion to dismiss the other action as applicable to both actions of the individual plaintiffs.

(1977). Alternatively, the commissioner's directive concerning the policy language might be a regulation under G. L. c. 30A, § 1 (5) (1984 ed.), and, therefore, could be subject to review under G. L. c. 231A and G. L. 30A, § 7. Compare *Kneeland Liquor, Inc.* v. *Alcoholic Beverages Control Comm'n*, 345 Mass. 228, 233-234 (1962) (approval of minimum retail liquor prices was a regulation), with *Associated Indus.* v. *Commissioner of Ins.*, 356 Mass. 279, 282-284 (1969) (approval of workers' compensation rates was not a regulation).

We choose not to resolve the question whether the individual plaintiffs would have had standing at this time to challenge the legality of the commissioner's action under an amended complaint. Consortium claims will undoubtedly be made against one or more 1985 compulsory private passenger automobile insureds in circumstances in which it will be important to know whether the commissioner's decision to mandate a policy change was lawful. Plainly, if § 34A dictates policy coverage consistent with the *Bilodeau* result, the commissioner has no authority to mandate inconsistent coverage. See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453-454 (1985); *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins., supra* at 296. This is or will become an important issue for insurers, certain claimants, and certain insureds, and we should decide it at this time.[9]

The basic claim is that the commissioner had no authority to change the result of our *Bilodeau* decision. Our decision, however, was not based on a construction of § 34A, but rather dealt with ambiguous policy language. *Bilodeau*, 392 Mass. at 539-541. We explicitly stated that, if the Legislature did not thereafter prescribe an answer to the ambiguity, it could be

---

[9] The individual plaintiffs do not claim in more than a passing fashion that the commissioner's action is invalid because under G. L. c. 30A, § 3 (§ 2 seems irrelevant), they should have had notice and an opportunity to argue their position to the commissioner before he made his decision. But others could well raise this point properly in a subsequent action. See *Westland Hous. Corp.* v. *Commissioner of Ins.*, 352 Mass. 374, 383-384 (1967). Liberty makes no reference to the commissioner's possible violation of G. L. c. 30A, § 3.

answered one way or the other with the permission of the commissioner. *Id.* at 545 n.9. As we have said, at the time the crucial language in § 34A was adopted, consortium claims were not recognized in this Commonwealth. Simply stated, the statutory language gives no answer to the question, and no legislative purpose requires, or even suggests a preference for, the adoption of one construction of § 34A over another. The decision concerning the relevant policy language was within the commissioner's discretion as a policy matter.[10]

3. Liberty urges us to decide that the mandated policy change is effective as of January 1, 1985, in spite of the provisions in § 113A concerning the giving of notice to policyholders of coverage reductions.[11] Both Liberty and the commissioner agree that the coverage change was effective on January 1, 1985, and that no notice needed to be given pursuant to § 113A. The individual plaintiffs make no argument concerning the effect of the relevant language. Although the issue is not before us, because the issue is of general concern, we shall make some comments, but in this instance we can give no dispositive

---

[10] The individual plaintiffs are arguing a question of law. They advance no challenge to the factual basis for the commissioner's decision and thus no issue is presented, as they contend, whether there was substantial evidence or "reasonable support in evidence" (*Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 384 Mass. 333, 337 [1981]), to justify the commissioner's decision.

The individual plaintiffs assert a denial of due process of law under the United States and Massachusetts Constitutions, claiming that the commissioner has denied them a property right. They had no State-created property interest or entitlement that prevented a prospective change in the policy language. Their constitutional claim lacks merit. See *American Family Life Assurance Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 482, cert. denied, sub. nom. *American Family Life Assurance Co.* v. *Hiam,* 464 U.S. 850 (1983).

[11] The relevant language in § 113A, as amended through St. 1981, c. 771, § 4, is as follows: "In the event a company or filing or rating organization eliminates or reduces certain coverages, conditions, or definitions in such policies issued under this section, the company must attach to each of such policy [*sic*] a printed notice setting forth what coverages, conditions or definitions have been eliminated or reduced. If explanations of such reductions or eliminated coverages are not contained in such a printed notice attached to such policy, then such coverages, conditions or definitions shall remain in full force and effect without such reductions and eliminations."

answer. The resolution of the issue might depend on the facts of a particular case, such as: what notice, if any, was given and when; whether an insured had the opportunity to increase coverage, effective January 1, 1985, either generally or in response to the change; what coverage the insured had; whether any insured reasonably relied on coverage according to the *Bilodeau* decision; and, of course, whether any claims asserted fall within the range where the coverage change is significant. We do accept the view that the commissioner mandated the reduction in coverage (and at a very late date) and thus the statutory notice requirement does not apply literally. We leave open the question whether in particular circumstances, considering the apparent purpose of the notice requirement, a policyholder or another insured may in fairness be entitled to the broader coverage of consortium claims provided by the prior policy because the insurer did not advise the policyholder of the reduction in coverage.

4. In Liberty's action, a declaration shall be entered that the Commissioner of Insurance lawfully ordered a change in the 1985 mandatory endorsement, changing within the policy terms the result in *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537 (1984), and that Liberty is entitled to no further relief. The commissioner's motion to dismiss Liberty's complaint is denied. The commissioner's motion to dismiss the complaints of the individual plaintiffs is allowed, and judgment shall be entered dismissing those complaints.

*So ordered.*