EDWARD PINHEIRO & others[1] vs. THE MEDICAL
MALPRACTICE JOINT UNDERWRITING ASSOCIATION OF
MASSACHUSETTS
(and a companion case[2]).

Hampden. Suffolk. September 12, 1989. - December 14, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Medical malpractice insurance, Construction of policy. *Husband and Wife*, Consortium. *Parent and Child*, Companionship and society. *Words*, "Injury to any one person," "All claims or suits."

In cases arising under a certain medical malpractice insurance policy, a patient's claim for malpractice and a claim for loss of the patient's consortium brought by a spouse or child constituted, for purposes of applying the policy's limitations of liability, distinct and separate "claims," each of which was subject to the separate "per claim" limits of recovery under the terms of the policy. [290-295] O'CONNOR, J., dissenting, with whom LYNCH J., joined.

CIVIL ACTIONS commenced in the Superior Court Department on August 7, 1985, and October 2, 1987, respectively.

The cases were reported to the Appeals Court by *Robert A. Mulligan*, J. After the cases were consolidated for appeal, the Supreme Judicial Court granted a request for direct appellate review.

---

[1]His wife, Maria Pinheiro, who has brought a claim for payment of damages for loss of consortium, and his daughter, Suzanne M. Pinheiro, who has · brought a claim for payment of damages for loss of companionship and society. Throughout the opinion we refer to these claims under the general term "consortium."

[2]The Medical Malpractice Joint Underwriting Association of Massachusetts *vs.* Agnes P. O'Connor, administratrix of the estate of Edward J. O'Connor, and individually. This case concerns Agnes O'Connor's claim for the payment of damages for loss of consortium.

*Acheson H. Callaghan* (*Steven L. Schreckinger* with him) for the defendant.

*Michael E. Mone* (*Rhonda J. Traver* with him) for Agnes P. O'Connor, administratrix, and others.

*Steven L. Hoffman* for the plaintiffs.

*James L. Ackerman, David B. Broughel & Kathryn A. O'Leary,* for American Universal Insurance Company & another, amici curiae, submitted a brief.

GREANEY, J. In these cases, we are called on to decide the scope of a limitation of liability provision in a medical malpractice insurance policy issued by The Medical Malpractice Joint Underwriting Association of Massachusetts (JUA). The provision in question reads as follows:

> "The limit of liability stated in the declarations as applicable to 'each claim' is the limit of the company's liability for loss resulting from any one claim or suit or all claims or suits because of injury to or death of any one person."

Specifically, we must decide whether the patient's claim for malpractice, and any claim for the loss of the patient's consortium brought by a spouse or child, constitute a single "claim" or separate "claims" for purposes of the limitation. The answer to this question determines whether the malpractice plaintiff and the consortium plaintiff or plaintiffs each may recover up to the policy's stated limit for "each claim" or whether their aggregate recovery is confined to a single amount. We conclude that the malpractice and consortium claims are distinct and separate claims, each of which is subject to separate "per claim" limits of recovery under the terms of the JUA policy.

The facts have been agreed on and may be summarized as follows.

*The Pinheiro case.* Edward Pinheiro was treated by a physician in 1976. Pinheiro subsequently sued the physician for negligence, claiming damages for pain and suffering, loss of income, and medical expenses. Additionally, Pinheiro's wife,

Maria, and his daughter, Suzanne, brought claims for loss of consortium. At the time he treated Pinheiro, the physician was insured under a 1975 JUA policy which included a liability limit of $100,000 for "each claim" and an "annual aggregate" limit of $300,000. JUA has conditionally settled the claims brought by the Pinheiros, and will pay Maria and Suzanne an agreed-on amount if it is judicially determined that their consortium claims are separate claims under the applicable policy.

*The O'Connor case.* In 1978, Edward J. O'Connor was treated by a physician. He died the following year, and his widow, as administratrix and individually, sued the physician for negligence, wrongful death, and loss of consortium. A jury returned a verdict for the plaintiff on all claims. The physician was insured under a 1977 JUA policy. The insurer has paid the per claim limit of the policy toward the judgment and has submitted the question of its liability on the remaining unpaid amount, which pertains to the consortium claim, for judicial determination. With these facts established, a judge of the Superior Court reported the coverage question to the Appeals Court. We granted an application for direct appellate review.

1. The JUA's position that the plain language of the limitation precludes a ruling that a consortium claim is a separate "claim" is principally based on two portions of the limitation: (1) the language which concerns a loss resulting from claims "because of injury to or death of any one person," and (2) the language which applies to a loss resulting "from all claims or suits." We discuss each in turn.

### *"injury to or death of any one person"*

The JUA argues that "[i]n the context of a medical malpractice policy, this . . . phrase ['injury to or death of any one person'] is not ambiguous and refers to the primary injury, which will ordinarily be a physical injury to or death of the physician's patient." Although the JUA acknowledges, as it must, that the term "injury," as used in its policy, encom-

passes injuries other than bodily injuries,[3] the JUA's brief consistently argues that their policy should be construed in the context of the "typical malpractice situation in which the patient suffers physical injury or death." In attempting to analogize the policy's language to that of an automobile insurance policy we construed in *Liberty Mut. Ins. Co. v. Commissioner of Ins.*, 395 Mass. 765 (1985), the JUA argues that, in the *Liberty Mut.* context, "the phrase 'injury to one person' is *not* ambiguous, any more than the language of the JUA policy is ambiguous. In context, they both clearly refer to physical injury" (emphasis in original). This interpretation of the words "injury" and "person" would prevent a consortium plaintiff's suit from constituting a separate "claim" because the consortium plaintiff suffered no physical injury and was not a patient of the insured physician. The only independent "claim" would belong to the bodily-injured patient — the malpractice plaintiff. Based on this analysis, JUA concludes that the consortium plaintiff's right to recover under the policy is essentially derivative — that it arises "because of" the injury to the patient — and thus must be consolidated with the malpractice plaintiff's action for purposes of limiting JUA's liability for "each claim."

The obvious difficulty with this interpretation is that the provision purports to cover claims resulting from an "injury

---

[3]As a settled general principle, the term "personal injury" is not synonymous with "bodily injury." See *Allstate Ins. Co. v. Diamant*, 401 Mass. 654, 658 (1988); *Malone* v. *Costa*, 151 Fla. 144 (1942); *Nuzzi* v. *United States Casualty Co.*, 121 N.J.L. 249 (1938). Consistent with this difference, the JUA policy uses the term "injury" in some of its provisions and the term "bodily injury" in others, and separately defines "bodily injuries" as "bodily injury, sickness or disease sustained by any person . . . including death." Within this framework, the JUA policy, in addition to insuring against claims arising out of "the rendering of or failure to render professional services," also covers other potential losses, such as those arising out of "service by the individual *insured* as a member of a formal accreditation or similar professional board or committee of a hospital or professional society" (emphasis in original). The policy, therefore, is clearly designed to cover losses which involve nonbodily injuries, including claims which could be brought by plaintiffs who are not patients of the insured physician.

to . . . *any one person*" (emphasis added). Thus the provision, by its express language, recognizes that there may be more than one person who suffers an "injury" because of a single act of malpractice. To be sure, the provision encompasses the claim or claims made by the patient.[4] But it also encompasses the claim or claims of any other person who is harmed as the result of the malpractice. It is settled that a consortium plaintiff suffers an injury which is separate and distinct from the loss incurred by the injured spouse or patient.[5] The limitation straightforwardly promises to pay up to the policy limit for a single claim or multiple claims stemming from the "injury" incurred by each "person" as a result of the malpractice. Although the JUA would like to have the limitation read to substitute the word "patient" for "person," or to insert the word "bodily," or the word "physical," before the word "injury," the clause must be construed as written. See *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 605-606 (1978); *Ober v. National Casualty Co.*,

---

[4]This point is enforced by the reference to "death" in the phrase under consideration.

[5]We recognized in *Diaz v. Eli Lilly & Co.*, 364 Mass. 153, 160 (1973), that a consortium plaintiff suffers a distinct injury, which may include the "loss of companionship and affection, of sexual enjoyment, and of prospects of [parent]hood." See *Mendoza v. B.L.H. Electronics*, 403 Mass. 437, 438 (1988); *Feliciano v. Rosemar Silver Co.*, 401 Mass. 141, 142 (1987); *Olsen v. Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 176-177 (1983). The recognition in *Diaz* of the consortium plaintiff's injury as a substantial loss, with the clear indication that the loss is separate from that incurred by the bodily-injured plaintiff, antedated the issuance of JUA's policies in these cases. As we have noted previously, "[o]ur prior cases indicate that a claim for loss of consortium is independent of the damage claim of the injured spouse." *Feltch v. General Rental Co.*, 383 Mass. 603, 607 (1981). See *Agis v. Howard Johnson Co.*, 371 Mass. 140, 146 (1976) ("the underlying purpose of [the loss of consortium action] is to compensate for the loss of companionship, affection and sexual enjoyment of one's spouse"); *Erickson v. Buckley*, 230 Mass. 467, 470-471 (1918) (wife's right to recover for personal injuries is "independent" of husband's right to recover for loss of wife's services and society); *Duffee v. Boston Elevated Ry.*, 191 Mass. 563, 564 (1906) (both personal injury plaintiff and consortium plaintiff are "enforcing an independent right"). JUA was on sufficient notice of the legal rule that a consortium plaintiff suffers an injury which is distinct from that suffered by a malpractice plaintiff.

318 Mass. 27, 30 (1945). We conclude that use of the words "injury to . . . any one person" in the JUA limitation, fairly and reasonably construed, see *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982), provides that each consortium plaintiff has a separate claim for limitation of liability purposes.[6]

### *"all claims or suits"*

JUA also relies on the "all claims or suits" language in the limitation as requiring a conclusion in its favor. The use of the plural in this phrase, contends JUA, means that all causes of action brought as a result of a single instance of malpractice constitute only one "claim" for limitation of liability purposes regardless of how many individual plaintiffs are involved.

The JUA's interpretation of this language is reasonable, but it is not the only reasonable interpretation. The language also could be interpreted as stating that "all claims or suits" brought *by one person* will be treated as a single "claim" for limitation of liability purposes. This interpretation also draws support from the policy language itself. The policy applies an "each claim" limit to "all claims or suits because of injury to . . . *any one person"* (emphasis added). Because a malpractice plaintiff and a consortium plaintiff are separate "person[s]," it is reasonable to read the policy as applying a separate "each claim" limit to (1) "all claims or suits because of injury to [the malpractice plaintiff]," and (2) "all claims or suits because of injury to [the consortium plaintiff]." Under this interpretation, the "all claims or suits" language would serve to preclude an individual plaintiff from alleging several theories of recovery and maintaining that each theory consti-

---

[6]JUA's reliance on *Dunn* v. *Travelers Ins. Co.*, 6 Mass. App. Ct. 910 (1978), does not help its case. The policy at issue in *Dunn* used the term "bodily injury." See *id.* at 911. It follows from our analysis above that, if JUA likewise had employed the term "bodily injury" rather than "injury," our result in this case might be different. While JUA might have intended to limit its liability as did the insurer in *Dunn*, the language it chose did not accomplish the objective.

tutéd a separate "claim" under the policy language.[7] The JUA's contrary interpretation of its limitation clause as "establish[ing] the maximum loss to which the JUA may be exposed from any single act of malpractice by an insured physician," effectively ignores this point and the limiting phrase "any one person." In agreeing with that interpretation, the dissenting opinion does likewise.

Because the "all claims or suits" language is susceptible of at least two reasonable interpretations, JUA is faced with the long-standing rule that, in construing unclear language in an insurance policy, the insured must be favored over the insurer.[8] See *Morin* v. *Massachusetts Blue Cross, Inc.*, 365 Mass. 379, 384 (1974); *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 147 (1972); *King* v. *Prudential Ins. Co.*, 359 Mass. 46, 50 (1971); *Palmer* v. *Pawtucket Mut. Ins. Co.*, 352 Mass. 304, 306 (1967). For obvious reasons, we adhere closely to this rule in cases like these, where an insurer is attempting severely to restrict coverage under its policy. See *Morin* v. *Massachusetts Blue Cross, Inc.*, *supra* at 389-390. We conclude that the "all claims or suits" language in the limitation means

---

[7]The malpractice plaintiff, for example, could seek recovery under theories of negligence, breach of contract, and even intentional tort, arguing that each item constituted a separate "claim" and was thus subject to a separate limit of recovery.

[8]JUA also argues that this rule of construction is inapplicable due to the "decisive role of the Commissioner of Insurance in establishing the coverage of the JUA's policy and the rates for that coverage." In support of this contention, JUA refers to our decision in *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537 (1984). The reliance on *Bilodeau* is misplaced. That case reiterated the settled rule that ambiguities will not automatically be resolved against an insurer when "the language of the standard policy is prescribed by statute and controlled by the Division of Insurance." *Id.* at 541. While JUA's policy is subject to statutory regulation, such regulation does not include prescribed policy language. See St. 1975, c. 362, § 6. JUA was free to choose the language of its policy, subject only to final approval by the Commissioner. Given this relatively uncurtailed choice, there is no reason not to hold JUA to the policy language it has selected. If the JUA now wishes to change the language to correct the problem, it is free to do so. See *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, *supra* at 545 n.9.

that no matter how many claims "any one person" has because of an "injury" resulting from a physician's malpractice, the insurer will pay damages (loss) to that particular person only up to the maximum amount stated in the declarations.[9]

2. A few other points that have been argued should be dealt with in the interest of completeness.

a. Our conclusion follows the holding in *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 545 (1984). The *Bilodeau* decision led to a change in the limitation language in automobile liability insurance policies, and JUA maintains that its limitation is a reasonable replica of the change.

In *Bilodeau*, we were called on to determine whether a loss of consortium claimant was entitled to a separate "per person" limit of recovery under the provision of the standard Massachusetts automobile liability insurance policy noted below.[10] We reasoned in *Bilodeau* that, "for purposes of applying the limitation of liability 'for injuries to any one person as a result of any one accident,' the loss of consortium claimant must be considered a separate 'person' from the bodily-injured 'person.'" *Id.* at 543. Thus, we concluded that the consortium plaintiff was entitled to a separate "per person" limit of recovery under the policy at issue in *Bilodeau.*

In 1985, the year following the *Bilodeau* decision, the Commissioner of Insurance modified the language of the standard automobile insurance policy to remove the separate "per person" limit for loss of consortium plaintiffs.[11] The

---

[9]The JUA's argument that a "doctor would hardly think that the limits of coverage she purchased would depend on whether the patient she was treating was married or whether he had one, two, three or six children," is beside the point. Our decision must be based exclusively on the policy language the JUA itself has selected. Considerations of what any particular insured thinks he has purchased are irrelevant.

[10]"The most we will pay for injuries to any one person as a result of any one accident is [$10,000]."

[11]The new version of the limitation read as follows:

"The most we will pay for injuries to one or more persons as a result of bodily injury to any one person in any one accident is [$10,000]."

We upheld the Commissioner's authority to make this change in *Liberty Mut. Ins. Co.* v. *Commissioner of Ins.*, 395 Mass. 765 (1985).

Commissioner effectively changed the *Bilodeau* result by modifying the "per person" liability language.

We disagree with JUA's contention that its policy is more similar to the post-*Bilodeau* version than to its pre-*Bilodeau* counterpart. First, with respect to the number of claimants swept within a single policy limit, the JUA policy differs from both versions of the automobile liability insurance policy by speaking in terms of "claims or suits" rather than numbers of people. As we have discussed above, "claims or suits" in the JUA policy reasonably could be read to refer to multiple "claims" by a single plaintiff or to all "claims" by all plaintiffs. Second, with respect to the nature of losses covered, the JUA policy (losses because of "injury") is closer to the pre-*Bilodeau* policy (losses because of "any one accident") than to the post-*Bilodeau* version (losses because of "bodily injury"). Like the term "accident," the term "injury" is a broad, general concept, and, as has been discussed, is readily differentiated from the more specific notion of "bodily injury." For these reasons, if an analogy is to be drawn at all, the analogy would be between the JUA limitation and the limitation in the pre-*Bilodeau* automobile liability policy.

b. JUA also attaches significance to the fact that its policy defines the limit of liability for a "loss" in the singular. Relying on the Appeals Court decision in *Doyon* v. *Travelers Indem. Co.*, 22 Mass. App. Ct. 336, 339 (1986), JUA argues that its use of the word "loss" indicates that recovery under its policy, no matter how many claims there may be, is limited to a single indivisible amount. The *Doyon* decision, however, was concerned with the liability limits under the wrongful death statute, G. L. c. 229, § 2 (1988 ed.), which contains very clear and specific language, see *id.* at 338, drawing the consortium claims within the limits of a single recovery on a death claim. Further, the *Doyon* court notes, *supra* at 337, that its application of the wrongful death stat-

ute to the consortium claim before it is based on the fact that there was no separate claim in the case for conscious pain and suffering on the part of the only person physically injured. Here, we have claims brought by the patients suffering the primary injury as well as separate claims brought by persons incurring a loss of consortium. Our facts have relevance to the reasoning contained in *Bilodeau*, not to the reasoning in *Doyon.*

c. In light of the conclusions we have reached above, the out-of-State cases JUA relies on do not require separate discussion.

3. A judgment is to enter in the Superior Court declaring that, under the JUA policy provision at issue in each case, the consortium claims constitute separate claims, each of which is subject to separate per claim limits of recovery. The judgment is also to include any damages appropriately due and unpaid.

*So ordered.*

O'CONNOR, J. (dissenting, with whom Lynch, J., joins). For the convenience of the reader, I repeat the policy provision in question: "The limit of liability stated in the declarations as applicable to 'each claim' is the limit of the company's liability for loss resulting from any one claim or suit or all claims or suits because of injury to or death of any one person." The JUA says that that provision unambiguously declares that all claims asserted by a patient and by others who might have claims, namely, members of the patient's family, on account of an injury to the patient constitute a single claim for limitation of liability purposes; that common understanding of the policy language dictates that result; that a "doctor would hardly think that the limits of coverage she purchased would depend on whether the patient she was treating was married or whether he had one, two, three or six children"; and that the provision is meaningless unless it is construed to mean that all claims by one or more persons

because of a patient's injury be treated as one claim for limitation of liability purposes. I agree with the JUA.

The court reasons that the "JUA's interpretation of [the limitation of liability] language is reasonable; but it is not the only reasonable interpretation." *Ante* at 293. There being two reasonable interpretations, says the court, the one least favorable to JUA is the right one. I do not agree that the relevant language reasonably can be construed in any way other than the way in which the JUA construes it. Therefore, I conclude that the rule that ambiguities in policy language must be resolved against the insurer does not apply. There is no ambiguity. The policy says what the JUA says it says.

Sound analysis must begin with the proposition that the JUA had a purpose in inserting the language of liability limitation. No one could reasonably conclude that ineffective, meaningless language was intended. It is apparent that the JUA intended to deal with situations in which one act of malpractice might give rise to more than one claim for damages. The JUA confronted the question whether, in such a situation, its liability as to each claim generated by an injury to a patient would be limited to the amount stated in the policy as the JUA's maximum exposure, or, instead, the stated amount of maximum exposure would apply to the sum of all the claims, considered collectively, generated by the patient's injury.

As a practical matter, the question that the provision was obviously designed to answer could arise only when a patient with a spouse or children, or both, is injured by a physician's malpractice, with the result that the patient has a personal injury claim and family members have separate claims for loss of consortium. The function of the provision is to make clear that those several claims are to be treated as one for the purpose of construing the JUA's liability cap.

The court fails to suggest any other scenario in which, in the absence of such a provision, a realistic question might arise with respect to the JUA's maximum exposure. Certainly, neither the patient nor a family member can have more than one claim or cause of action for the injury or loss

he or she asserts. "[D]amages resulting from a single tort . . . are, when suffered by one person, the subject of only one suit as against the wrongdoer." *Dearden* v. *Hey*, 304 Mass. 659, 663 (1939). *Parrell* v. *Keenan*, 389 Mass. 809, 816 n.10 (1983). *Cousineau* v. *Laramee*, 388 Mass. 859, 860-861 (1983).

Although causes of action may be grounded on distinct theories of recovery, they cannot be split. For example, we held in *Forman* v. *Wolfson*, 327 Mass. 341, 343, cert. denied, 342 U.S. 888 (1951), that, following a judgment for the defendant in a tort action alleging negligent malpractice, a subsequent action against the same defendant to recover for the same injury based on breach of contract will not lie. See also *Willett* v. *Webster*, 337 Mass. 98, 102 (1958), quoting *Mackintosh* v. *Chambers*, 285 Mass. 594, 596 (1934), as follows: "The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong." The court errs, then, when it states that the provision in question may reasonably be interpreted as "serv[ing] to preclude an individual plaintiff from alleging several theories of recovery and maintaining that each theory constituted a separate 'claim' under the policy language." *Ante* at 293-294. The language, if interpreted as the court interprets it, says nothing that would not be true if the language were omitted. Interpreted in that way, it is meaningless.

Construed as the JUA would construe it, the limitation of liability provision supplies the answer to an important question that would be open in its absence, and does so by language that is consistent with common usage. The court's construction, however, is strained, and results in the provision being bereft of meaning. Thus, the provision reasonably can be construed in only one way. It is not ambiguous. No tie-breaking rule of construction is called for. The JUA's proffered construction is correct.

The two cases that are before the court are here as a result of a Superior Court judge's report of the coverage question

discussed in the court's and my separate opinions. I would direct the entry of a judgment declaring that the limit of liability in the JUA policy applies to all damages arising out of an incident of malpractice which injures a patient, regardless of the number of claims for damages, or the number of theories in support thereof, including damages for loss of consortium, that are brought, and that the JUA does not owe the plaintiffs in either case any further amounts.