Gants, Ralph D., J.
On May 1, 2000, the defendant Plymouth County Sheriffs Department (“Sheriffs Department”) was sued in the United States District Court for the District of Massachusetts by Kimberly Connor for civil rights violations arising from the Sheriffs Department’s routine practice, established by a written policy, of conducting a strip search of all detained women entering the Plymouth County Regional Lockup Facility in Marshfield. Kimberly Connor v. Plymouth County, Civ. No. 00-10835-REK (D.Mass. 2000). The plaintiff Connor brought the suit both on behalf of herself and as the putative class representative of all women similarly strip-searched at the Lockup Facility. After being served with the complaint, the Sheriffs Department notified its insurer, the plaintiff Great American Insurance Company (“Great American”), which insured the Sheriffs Department for Law Enforcement Liability for the three-year period from November 24, 1996 through November 24, 1999. Of the 113 members of the class, 104 had been arrested and strip-searched during this three-year period. The case was ultimately settled, with Great American paying $1,075,012 towards the settlement and the legal fees incurred in litigating the case. Great American, in paying this amount, reserved its right to seek reimbursement from the Sheriffs Department based on its position that the Law Enforcement Liability Policy (“Policy”) established a $25,000 deductible “per claim,” and each member of the class presented a separate claim. Since the amount paid in settlement to all but one of the 104 class members strip-searched during the policy period was less than $25,000, Great American seeks the return of $1,071,839.09, all but $3,172.91 of the amount it paid to resolve the civil rights case.
Great American has now filed this action to seek that reimbursement. Both parties have cross moved for summary judgment. After hearing, for the reasons detailed below, this Court DENIES Great American’s motion for summary judgment and ALLOWS the Sheriffs Department motion for summary judgment.
DISCUSSION
The sole issue in this case is the meaning of the word “claim” in the Policy. “The interpretation of policy language is a question of law for the judge . . .” A.W. Chesterton Co. v. Mass. Insurers Insolvency Fund, 445 Mass. 502, 518 (2005). The primary objective in interpreting a contract for insurance is to construe the contract so as to reflect the intention of the parties at the time the policy was executed. Affiliated FM Ins. Co. v. Constr. Reinsurance Corp., 416 Mass. 839, 845 (1994). When interpreting an insurance policy a court is “required to ‘construe the words of the policy in their usual and ordinary sense.’ ” Liquor Liab. Joint Underwriting Assoc. v. Hermitage, 419 Mass. 316, 320 (1995), quoting Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978). See also Bilodeau v. Lumbermans Mut Cos. Co., 392 Mass. 537, 541 (1984) (policy will be interpreted according to “fair meaning of the language used, as applied to the subject matter”). A court should inquire “what the simplified, conversational language of the policy would mean to a reader applying normal reasoning or analysis.” Commerce Ins. Co. v. Koch, 25 Mass.App.Ct. 383, 384 (1988).
If the terms of a policy are clear and unambiguous, they will be interpreted and applied in accordance with their plain and ordinary meaning. See Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. at 605. However, since an insurance policy is essentially an adhesion contract drafted by the insurer, if a court determines that the language of the policy is ambiguous, the ambiguity “must be construed against the insurer.” Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 282 (1997); Hingham Mut. Fire Ins. Co. v. Niagara Fire Ins. Co., 46 Mass.App.Ct. 500, 504 (1999). The “long-standing rule ... in construing unclear language in an insurance policy” is that, when policy language “is susceptible of at least two reasonable interpretations, . . . the insured must be favored over the insurer.” Pinheiro v. Medical Malpractice Joint Underwriting Ass’n of Mass., 406 Mass. 288, 294 (1989). See also Hakim v. Massachusetts Insurers’ *351 Insolvency Fund, 424 Mass. at 281 (where there is more than one rational interpretation of policy language, “the insured is entitled to the benefit of the one that is more favorable to it”), quoting Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993).
Here, the Policy provides for a $25,000 deductible “per claim” but “claim” is not a defined term in the Policy. Indeed, the word “claim” is not even used in any of the definitions provided in the Policy. While not defined, the word “claim” is used various times in the Policy. Great American contends that it is clear from the use of the word “claim” in the Policy, viewed in the overall context of the Policy, that a “claim” means a claim for loss made by an individual third party to the Sheriffs Department. Under Great American’s interpretation, each woman strip-searched made a separate “claim” even though all prosecuted their claims together in the class action lawsuit.[1] The Sheriffs Department contends that the word “claim” in the Policy is reasonably understood to be the claim for coverage made by the Sheriffs Department to Great American following service of the class action complaint. Under the Sheriffs Department’s interpretation, there was only a single “claim,” which covered all the class members in the class action lawsuit, so the $25,000 deductible should be applied to the entire amount of the class action settlement and not to the amount paid to each of the 104 class members.
While the Policy does not define a “claim,” it does use the word “claim” various times. The Policy provides:
1. “(W]e may, at our discretion, investigate any ‘wrongful act’ and settle any claim or ‘suit’ that may result.” Policy at 1.
2. “The Insured shall not, except at his own cost and this [sic] own account, make any payment, admit any liability, settle any claim, assume any obligation or incur any expense without our written consent.” Policy at 1.
3. “This insurance does not apply to:
5. Claims arising out of the performance of any act or service of police duty for anyone other than the Named Insured . . .
6. Claims arising out of the official employment policies or practices of the insured . . .
7. . . . claims of injury arising out of the acts of fraud committed by or at the direction of the insured with affirmative dishonesty or actual intent to deceive or defraud.
8. Any actions, claims, ‘suits’ or demands seeking relief or redress in any form other than money damages . . ." Policy at 1-2.
4. “We will pay, with respect to any claim or ‘suit’ we defend: . . .
3. all reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or ‘suit’ . . ." Policy at 2.
5. “The Limits of Insurance shown in the Declaration and the rules below fix the most we will pay regardless of the number of (1) insureds; (2) claims made or ‘suits’ brought; or (3) persons or organizations making claim or bringing ‘suits.’ ” Policy at 3.
6. “The Limit of Insurance shown in the Declarations applicable to each ‘occurrence’ is the most we will pay for all claims arising out of the same act or interrelated acts of one or more of the insureds.” Policy at 3.
7. “The deductible amount stated in the Declarations, if-any, is applicable to each claim and shall be subtracted from the total amount of money damages and claims expenses resulting from each claim and the Company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim.” Policy at 3.
8. “You must see to it that we are notified as soon as practicable of a ‘wrongful act’ which may result in a claim.” Policy at 3.
9. “If a claim is received by any insured, you must: (a) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or ‘suit’; (b) notify us as soon as practical.” Policy at 3.
10. “You and any other involved insured must: . . . (c) cooperate with us in the investigation, settlement or defense of the claim or ‘suit’ . . .” Policy at 3; and
11. “The coverage provided by this policy may be intended to cover claim(s) that occurred during the prior acts coverage period shown above, subject to the following conditions and limitations: (1) This policy does not apply to any claim(s); based upon or arising from the essential facts underlying or alleged in any manner of either claim, threat or claim or any occurrence which might give rise to a claim, which prior to the policy inception date shown above, was known to the insured. (2) This policy does not apply to any claim(s) which occurred during the prior acts coverage period, that were first reported during the first sixty (60) days of this policy period . . .” General Endorsement of Policy.
From reading each of these references to “claims” in the Policy, it is far from clear that the word is meant solely to refer to a claim made by a third party to the insured, rather than a claim for coverage made by the insured to the insurance company based on a third-party demand or suit. Only in (9) above is it plain that the word “claim” refers to a claim received by the insured. When used elsewhere in the Policy, the word “claim” may refer either to the claim received by the insured or the claim made by the insured to the insurance company. Indeed, in (3) above the Policy *352 speaks of “claims” or “demands,” which might suggest that a demand for relief by a third party is distinguishable from a claim for relief. In short, while Great American’s interpretation of the word “claim” is reasonable, “it is not the only reasonable interpretation.” Pinheiro v. Medical Malpractice Joint Underwriting Ass’n of Mass., 406 Mass. at 293. The Sheriffs Department interpretation is also reasonable.
Moreover, even if Great American’s interpretation were the only reasonable interpretation and it were crystal clear from the Policy that a “claim” means a claim by a third party to an insured, there is nothing in the Policy to suggest that, when an attorney makes a collective claim on behalf of multiple third parties, there are as many claims as there are individual third parties. Here, the claim by the third party appears to have been made through the service of the class action complaint. Great American contends that service of the lawsuit should be viewed as the submission of 104 individual claims; the Sheriffs Department contends that it should be viewed as the submission of a single claim. Not only is the Sheriffs Department interpretation reasonable in view of the language of the Policy, but it appears to have been the interpretation that Great American itself applied when it administered the claim because it assigned the matter a single claim number, not 104 separate claim numbers.
If Great American wished its deductible to be applied to each claim of loss by each individual third party, then it should have included language in the Policy that made this intention clear, either by defining “claim” or by adding language to the provision regarding the deductible. Great American failed to do so, and under the “long-standing rule” of the Supreme Judicial Court favoring the insured’s reasonable interpretation over that of the insurer’s, it must pay the price of the ambiguity that it created. Id. at 294.
ORDER
For the reasons stated above, this Court DENIES Great American’s motion for summary judgment and ALLOWS the Sheriffs Department motion for summary judgment. Judgment shall enter forthwith in favor of the defendant Sheriffs Department.

The word “suit” is a defined term in the Policy, meaning “a civil proceeding in which damages to which this insurance applies are alleged.” Policy at 5.