Moriarty, J.
This is a civil action in which the plaintiff seeks a judgment declaring, in effect, that the defendant is precluded by the provisions of G.L. c. 90, §34A from asserting any lien pursuant to the provisions of G.L. c. 111, §70A against the proceeds of a civil action brought by her against a third party alleging negligence in the operation of a motor vehicle. Hie case is presently before me on the defendant’s motion for summaiy judgment. The following facts appear to be undisputed.
The defendant. Medical West Community Health Plan, Inc. (Medical West), is a health maintenance *22 organization (HMO) operating under the provisions of G.L. c. 176G. The plaintiff Creswell is a member of that organization.
On or about October 13, 1989, Creswell was involved in a two-car motor vehicle accident in which she sustained personal injuries. The operator of the other vehicle was one George Wallis.
Creswell's motor vehicle was insured pursuant to the provisions of G.L. c. 90, §§34A-34Q, and her insurer paid her medical expenses resulting from her said injuries to the extent of $2,000.00. The balance of the cost of her medical treatment has been borne by the defendant.
The plaintiff has brought a civil action against Wallis seeking damages for the personal injuries sustained by her in the said accident. The defendant has filed a notice of lien with Creswell, her attorney, Wallis, and Wallis’s insurance carrier pursuant to the provisions of G.L. c. 111, §70B. Section 70B provides the method for asserting and perfecting the statutory lien provided to hospitals, health maintenance organizations and medical or dental service organizations by G.L. c. 111, §70A
G.L. c. 111, §70A provides in pertinent part as follows:
. . . any health maintenance organization which has furnished health services ... to a person injured in ... an accident (that is not covered by the workmens’ compensation act) shall, .. . have a lien for such benefits, upon the net amount payable to such injured person . . . from another person as damages on account of such injury.
Were it not for the provisions of G.L. c. 90, §34A, that section would clearly establish the lien that the defendant seeks to assert. The plaintiff contends, however, that the third sentence of a paragraph inserted at the end of the definition of “Personal injury protection” set forth in Section 34A by St. 1988, c.273, §16, effectively nullifies G.L. c. 111, §70A, at least insofar as it would otherwise apply in her case.
Our Compulsory Motor Vehicle Liability Insurance statutes (G.L. c.90, §§34A-34Q) have never been a model of clarity. They are even less so since the 1988 amendment. An understanding of the issue involved in this case requires a comparison of the pre-1988 provisions of the statute with its amended provisions.
Prior to January 1, 1989 (the effective date of the 1988 amendment), the definition of “personal injury protection" (PIP) set forth in §34A could be paraphrased as describing those provisions of a motor vehicle liability insurance policy or bond which provided for payment to the named insured (and others) of all reasonable expenses incurred within two years from the date of an accident, for necessary medical, surgical, x-ray and dental services, and, in the case of gainfully employed persons, of an amount not to exceed 75% of their lost earnings, “without regard to negligence or gross negligence or fault of any kind, to the amount or limit of at least two thousand dollars.”
Section 34M of Chapter 90 provided (in its second paragraph) that an owner, registrant, operator or occupant of a motor vehicle to which PIP benefits applied who would otherwise be liable in tort was to be exempt from tort liability for damage because of bodily injury to the extent that the injured party was entitled to recover PIP benefits from his insurer.
As a matter of procedure. Section 34M provided that if a person claiming or entitled to PIP benefits brought an action of tort against the owner or operator of a vehicle registered in the commonwealth (and hence covered by PIP), PIP payments that would otherwise be due to such person would not become payable until a settlement was reached or a final judgment rendered, and the amounts then due would be reduced to the extent that damages for expenses or loss otherwise recoverable as a PIP benefit were included in the settlement or judgment.
Section 34M also provided (in its fifth paragraph) that the insurer paying PIP benefits would be sub-rogated “to that exact extent” and could bring an action in tort against any person who was not exempt from liability under the provisions of the second paragraph. In the case of a person who was exempt from liability under the provisions of the second paragraph, it provided such an insurer with the right to make a claim[1] for all expenses it incurred on account of such payment, including the net amount of the benefits paid, against any other insurer of a motor vehicle whose owner or operator would, except for the exemption from tort liability provided by the second paragraph, be liable in tort for such damages — but provided that determination of entitlement to maintain such a claim would be made by agreement of the parties or by arbitration rather than by a tort action.
The sixth paragraph of Section 34M permitted an insured to choose a “deductible” if he wished to avoid the cost of such coverage, and hence to reduce or even eliminate the amount of PIP benefits available to him. He could choose a deductible in the amount of $100, $250, $500, $1,000 or $2,000 at his option.
The 1988 amendment (Chapter 273, §15) increased the mandatoiy amount of PIP benefits from $2,000.00 to $8,000.00, but did not change the types of expenses and losses that were to be included in PIP benefits. It accomplished that change by simply striking from the definition of “personal injuiy protection" found in Section 34A the expression, “to the amount or limit of at least two thousand dollars,” and substituting therefor the expression, “to the amount or limit of at least eight thousand dollars.”
*23 The 1988 amendment (Chapter 273, §16) then added the following paragraph to the definition of PIP benefits.
Notwithstanding the foregoing, personal injury protection provisions shall not provide for payment of more than two thousand dollars of expenses incurred within two years from the date of accident for medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services if, and to the extent that, such expenses have been or will be compensated, paid or indemnified pursuant to any policy of health, sickness or disability insurance or any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services. No policy of health, sickness or disability insurance and no contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services, shall deny coverage for said expenses because of the existence of personal injury protection benefits. Notwithstanding the provisions of section seventy A of chapter one hundred and eleven of the General Laws, no entity which is the source of the provision, payment or reimbursement of said expenses shall recover any amount against the claimant nor shall it be subrogated to the rights of the claimantfor more than two thousand dollars of personal injury protection benefits, nor shall it have a lien against the claimant's personal injury protection benefits on account of its provision payment of (sic) reimbursement of said expenses. Within two years from the date of the accident, if the claimant has a policy of insurance which provides health benefits or income disability coverage, and the claimant is unwilling or unable to pay the costs of renewing or continuing that policy of insurance in force, the insurer providing personal injury protection coverage to the claimant may tender to the claimant the cost of maintaining the said policy in force for the two- year period. Upon receipt of such tender, the claimant shall continue such policy of insurance; or an equivalent policy in force for the two- year period. Nothing in this subsection shall be construed to compel a claimant to renew or maintain any policy of insurance in force prior to the receipt of such tender, or to interfere in any way with the claimant’s choice of physician or course of medical treatment. (Emphasis supplied).
The added paragraph takes into account the fact that many persons who are entitled to PIP benefits are also insured by policies of health, sickness or disability insurance, or covered by contracts or agreements of entities (groups, organizations, partnerships or corporations) to provide, pay for or reimbursethecostofmedical, hospital, dental orother health care or services. Presumably to prevent duplication of recovery, it provides that personal injury protection provisions shall not provide for payment of more than two thousand dollars of expenses, “... if, and to the extent that, such expenses have been orwill be compensated, paid or indemnified pursuant to any policyofhealth.sicknessordisabilityinsuranceorany contract or agreement of any group, organization, partnership or corporation to provide, pay for orreim-burse the cost of medical, hospital, dental or other healthservices.[2]
Thus, although the amount of PIP benefits have been increased to $8,000.00, the motorvehicle insurer might only be required to pay the first $2,000.00 of such benefits. If the claimant has some other form of health or accident coverage in effect, the provider of such coverage is required to pay the next $6,000.00. The statute also explicitly provides that no policy of health, sickness or disability insurance and no contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services, shall deny coverage for such expenses because of the existence of personal injury protection benefits.
Except to the extent of increasing the amount of the “deductible” that an insured may elect under the provisions of the sixth paragraph from $2,000.00 to $8,000.00, the 1988 amendment made no change in the provisions of Section 34M. An owner, operator or occupant of a motorvehicle to which PIP benefits apply who would be otherwise liable in tort is still exempt from tort liability for damage because of personal injury to the extent that the injured party is entitled to recover PIP benefits, (or would be so entitled were it not for a “deductible”) except that now such an exemption may be as much as $8,000.00 rather than the former limit of $2,000.00.
The provisions of the fifth paragraph of Section 34M also remain intact. An insurer paying PIP benefits is still subrogated to the rights of any person it pays and may bring an action in tort against a person who is liable in tort and not exempt from such liability under the provisions of the section. In the case of a person who is liable in tort but is exempt from liability under the section, the insurer may still make a claim against that person’s insurer which must be resolved by agreement or by arbitration.
The third sentence of the new paragraph limits the rights of recovery of any “entity which is the source of the provision, payment or reimbursement” of expenses “incurred within two years from the date of accident for medical, surgical, x-ray, and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services." The “entity” referred to may be an insurer under a motor vehicle liability policy; it may be an insurer *24 under a health, accident or disability insurance policy held by the injured party; or it may be a group, organization, partnership or corporation (such as an HMO) which is bound by contract or agreement to provide, pay for or reimburse the cost of medical, hospital, dental or other health care services.
There are three (3) limitations imposed on such “entities” by the clause.
(1) They may not recover any amount of the expenses paid by them from the claimant.[3]
(2) Their right of subrogation (under the fifth paragraph of Section 34M) is limited to the first two thousand dollars of PIP benefits paid.[4] Such rights of subrogation only exist in any event against persons who are not exempt from liability under the provisions of the second paragraph of Section 34M.
(3) They may have no lien against the claimant’s personal injury protection benefits.
It will be noted that a lien is not prohibited against a recovery of damages from a third party in an action of tort. It is prohibited only against the claimant’s PIP benefits. In a case where the tort defendant is himself insured under a Massachusetts motor vehicle liability policy, he is exempt from liability to the extent of the plaintiffs PIP benefits, so any damages recovered against him will not include any such benefits.
The added paragraph appears to be the result of a legislative effort to coordinate various types of insurance coverage in order to prevent duplication of recovery and hence to minimize the societal costs resulting from motor vehicle accidents.[5] It is a principle of statutory construction that statutory words are to be given their usual and ordinary meaning considered in light of the aim to be accomplished by the Legislature. Surrey v. Lumbermens Mutual Casualty Co., 384 Mass. 171, 424 NE.2d 234, 238 (1981). The entire paragraph should be read in context. When so read it seems clear that the legislative intent in limiting the rights of the benefit providers was to assure that the injured party would receive his or her full entitlement of PIP benefits, and not to permit him or her to recover damages from the third-party tortfeasor for expenses for which he or she has already been compensated. The plaintiffs argument is faulty in that it attempts to separate the third sentence from the rest of the paragraph and analyze it in a vacuum.
In this case the defendant is not seeking any recov-eiy directly from the plaintiff and it is not attempting to bring an action against Wallis as subrogee of the plaintiffs rights against him. It is seeking to assert a lien against whatever recovery the plaintiff may realize against Wallis, but it expressly disclaims any intent to claim a lien against the plaintiffs PIP benefits.
It is undisputed that the plaintiff has received $2,000.00 in PIP benefits from her motor vehicle liability insurer, and that the balance of her medical and hospital expenses have been paid by the defendant, The exact amount of expenses paid by the defendant does no t appear, however, so it is not certain that the plaintiffs PIP benefits have been exhausted. The defendant can claim no lien for any expenses paid by it unless the plaintiffs PIP benefits have been exhausted, and then only to the extent that its payments exceed the amountof the total PIP benefits paid. Otherwise the defendant would be effectively taking back the PIP benefits it paid, and that it cannot do.
Accordingly it is ORDERED that summary judgment be entered adjudging and declaring that the defendant, Medical West Community Health Plan, Inc., is entitled to assert and enforce a lien pursuant to the provisions of G.L. c. Ill, §70A against the proceeds, if any, of a civil action brought by the plaintiff, Margaret Creswell, against one George Wallis seeking damages for a personal injury sustained by her in a motor vehicle accident in the City or Westfield on or about October 13, 1989, to the extent, but only to the extent, that medical expenses paid by it on behalf of the said Margaret Creswell exceed the total personal injury protection (PIP) benefits that she has received or is entitled to receive (a total of $8,000.00) as a result of said injury.[6]
The defendant is to have its costs of action.

This claim could not be properly characterized as “sub-rogation," because since the tortfeasor is exempt from liability for such expenses, the recipient of the PIP benefits has no right to which his insurer can be subrogated. The fact that his insurer can nevertheless make a “claim" against the tortfeasor’s insurer is somewhat paradoxical.

 The added paragraph also provides that if, within two years of an accident, the claimant has a health, accident or disability policy but is unwilling or unable to pay the costs of continuing it in effect, the insurer providing PIP coverage may tender the cost of maintaining it in force for the two year period — in which event the claimant is required to continue it in force for the two year period.

 It would be a strange sort of “coverage" if they could. A scheme which would require an entity to pay out benefits to a claimant, and then permit it to recover them back for no apparent reason, would make little sense.

 That right would normally be held by the motor vehicle liability insurer, but could be held by another entity if the insured had claimed a full deductible under the sixth paragraph of Section 34M.

 The need for some such coordination was foreseen even before the first “no fault" insurance law became effective. See Morin v. Massachusetts Blue Cross, Inc., 365 Mass. 379, 311 NE.2d 914, 921 n.16 (1974).

 I note that this interpretation seems to agree with that of the Division of Insurance promulgated on September 21, 1990 in Bulletin B-90-2.